

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-15-00196-CR

THE STATE OF TEXAS, APPELLANT

V.

JOSE LUIS CORTEZ, APPELLEE

On Appeal from the 108th District Court
Potter County, Texas
Trial Court No. 68,587-E, Honorable Douglas Woodburn, Presiding

February 3, 2017

OPINION[1]

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.[2]

At the suppression hearing, the trooper was asked: "So you're telling the Court that because you see a van, it's clean and it's got two people in it, that [sic] was

---

[1] The original opinion in this appeal was issued on November 18, 2015. Our decision was then appealed to the Texas Court of Criminal Appeals. The latter found that we did not address every issue raised and necessary to the final disposition of the appeal as required by Texas Rule of Appellate Procedure 47.1. *State v. Cortez*, No. PD-1652-15, 2016 Tex. Crim. App. LEXIS 1194, at *7-8 (Tex. Crim. App. Oct. 12, 2016). The issue which we purportedly failed to address concerned *Heien v. North Carolina*, 574 U.S. __, 135 S. Ct. 530, 190 L. Ed. 2d (2014) and its support for the State's contention that the State Trooper involved "having seen Cortez driving, at least on the fog line, reasonably believed that a violation of TEX. TRANS. CODE § 545.058(a) had occurred and his stopping of Cortez was authorized by law." The quoted argument appeared on page 16 of the State's original appellant's brief. Thus, the Court of Criminal Appeals vacated our judgment "and remand[ed] the case for reconsideration in light of *Heien*." *Id.* Both parties were given leave to brief that issue again. Both did. We now reissue our original opinion, with modifications, and include a disposition of the *Heien* issue.

[2] Justice Mackey K. Hancock, retired, not participating.

indicators of potential criminal activity for you?" The trooper answered: "Yes, sir, they are. They - in and of themselves are nothing, but in the total - when you start adding them all together, they can be." When two people in a clean car indicate criminal activity, then the words of John Lennon have come to fruition: "Strange days indeed - most peculiar, mama."[3]

Nonetheless, the foregoing circumstances led the trooper to first follow Cortez's minivan down Interstate 40 and then stop him after it may have twice crossed onto but not over the "fog line" appearing on the right side of the lane.[4] Cortez believed that the stop was illegal. The trial court agreed and granted his motion to suppress evidence. This decision, according to the State, evinced an abuse of discretion, and the findings of fact and conclusions of law issued by the trial court to support it allegedly lacked evidentiary basis. We affirm.

*Applicable Law*

First, the applicable standard of review is that enunciated in *State v. Iduarte*, 268 S.W.3d 544 (Tex. Crim. App. 2008). There, we are told that:

> When reviewing the trial court's ruling on a motion to suppress, we view the evidence in the light most favorable to the trial court's ruling. When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings. We review the trial court's legal ruling *de novo*. We uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case.

> We afford a great deal of deference to a trial judge's rulings on questions of historical fact, and also on rulings that both apply the law to facts and turn on an evaluation of credibility and demeanor. Nonetheless, mixed questions of law and fact may be reviewed *de novo* when they do not depend on credibility or disputed facts. This case presents mixed questions of law and fact, and we will therefore review the trial court's findings of fact and conclusions of law *de novo*.

---

[3] From the song "Nobody Told Me."

[4] The solid white line found on the right side of a traffic lane has come to be called the fog line.

*Id.* at 548-49 (citations omitted); *accord*, *Jaganathan v. State*, 479 S.W.3d 244, 247-48 (Tex. Crim. App. 2015) (criticizing the intermediate appellate court because it "did not view the record in the light most favorable to the trial court's ruling").

Second, when a warrantless stop is made, the burden lies with the State to prove its legitimacy. *Grimaldo v. State*, 223 S.W.3d 429, 432 (Tex. App.—Amarillo 2006, no pet.). It may fulfill the burden by illustrating that the law enforcement official making the stop had reasonable suspicion to believe a traffic infraction occurred. *See Jaganathan v. State*, 479 S.W.3d at 247 (stating that "[a]n officer may make a warrantless traffic stop if the 'reasonable suspicion' standard is satisfied"). Such suspicion arises when the officer has "'specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaging in criminal activity.'" *Id.*, *quoting, Abney v. State*, 394 S.W.3d 542, 548 (Tex. Crim. App. 2013).

Third, and as previously mentioned, the traffic infraction at issue here involved Cortez supposedly driving on an improved shoulder. Per § 545.058(a) of the Texas Transportation Code, one operating a motor vehicle "may drive on an improved shoulder to the right of the main traveled portion of a roadway if that operation is necessary and may be done safely, but only" under seven enumerated circumstances. TEX. TRANSP. CODE ANN. § 545.058(a) (West 2011). Those seven circumstances consist of 1) "to stop, stand, or park," 2) "to accelerate before entering the main traveled lane of traffic," 3) "to decelerate before making a right turn," 4) "to pass another vehicle that is slowing or stopped on the main traveled portion of the highway, disabled, or preparing to make a left turn," 5) "to allow another vehicle traveling faster to pass," 6) "as permitted or required by an official traffic-control device," or 7) "to avoid a collision."

3

*Id.*[5] The legislature defined "improved shoulder" to mean "a paved shoulder." *Id.* § 541.302(6). It defined "shoulder" to mean that "portion of a highway" 1) "adjacent to the roadway," 2) "designed or ordinarily used for parking," 3) "distinguished from the roadway by different design, construction, or marking," and 4) "not intended for normal vehicular travel." *Id.* § 541.302(15). Noticeably absent from both these definitions and § 545.058(a) of the Transportation Code is any reference to a solid white line or "fog line," though, arguably, the "fog line" may be the "different . . . marking" referred to in § 541.302(15).

*Application of Law*

Again, the trial court granted Cortez's motion to suppress and executed written findings of fact and conclusions of law supporting its decision. Among the findings were those stating that:

> 7. [The trooper] began following the Defendant's vehicle while Defendant's vehicle was traveling in an easterly direction in the right hand lane of the four lane roadway. He then sped up and pulled into the left hand lane as his vehicle approached the Defendant's vehicle. As [the trooper's] vehicle approached and pulled into the left hand lane, Defendant's vehicle *moved toward the improved shoulder*.
>
> 8. A short time later, Defendant's vehicle *moved toward the improved shoulder* a second time as the Defendant's vehicle exited the Interstate to the right at a marked exit ramp.
>
> 9. [The trooper] stated he stopped Defendant's vehicle because he observed [] the Defendant's vehicle drive on the improved shoulder of the roadway on the two occasions noted above, each of which event he believed to constitute violations of state traffic laws.

---

[5] At this point, though, it should be noted that simply driving on an improved shoulder is not prima facie evidence of a crime. *Lothrop v. State*, 372 S.W.3d 187, 191 (Tex. Crim. App. 2012). Indeed, "if an officer sees a driver driving on an improved shoulder, and it appears that driving on the improved shoulder was necessary to achieving one of the seven approved purposes, and it is done safely, that officer does not have reasonable suspicion that an offense occurred." *Id.* So, before § 545.058(a) can be the basis of a traffic stop, the officer must see not only the prospective detainee driving on the shoulder but also the absence of those circumstances permitting the person to so drive. *See id.* (concluding that the State did not satisfy its burden to prove reasonable suspicion since the officer failed to testify that Lothrop's attempt to pass a slower moving vehicle appearing in his lane by driving on the improved shoulder was unsafe or unnecessary).

4

10. During the suppression hearing, an oral and video tape recorded by equipment maintained in [the trooper's] patrol vehicle was played. On the tape, [the trooper] approached the driver's side of the van and told Defendant that he stopped the Defendant because he had *driven ... "onto the white line, that little white line."*

11. The video recording played at the hearing clearly demonstrated each of the two occasions upon which [the trooper] testified he had observed the Defendant's vehicle drive upon the improved shoulder. On each occasion the right rear tire (or its shadow) was observed by the Court to come in *the proximity of and possibly touch* the inside portion or more of the white line delineating the roadway from the improved shoulder (referred in testimony, and hereinafter, as the "fog line") but not to extend past the [] outermost edge of the fog line.

[and]

12. The [S]tate produced no evidence that [the trooper] observed, or believed he had observed, any portion of the Defendant's vehicle pass outside the outermost edge of the fog line.

(Emphasis added). Under the category of conclusions of law, the trial court wrote:

21. The improved shoulder of a state roadway begins at the point of the fog line which is furthest from the center of the roadway.

22. The Defendant's vehicle did not cross outside the outermost edge of the fog line onto the improved shoulder of the roadway. Crossing over the portion of the fog line nearest the center of the roadway or upon the fog line is not a violation of Texas traffic law; *therefore the vehicle was not operated on the improved shoulder of the roadway on either occasion made the basis for the [trooper's] traffic stop.*

23. Texas Transportation Code section 545.058 (5) provides that driving on the improved shoulder of a roadway is permissible under the circumstances when and to the extent necessary a driver is being passed by another vehicle. The first occasion in which the officer testified that the Defendant drove onto the improved shoulder occurred after the officer's vehicle entered the passing lane and accelerated toward the Defendant's vehicle; therefore, the Defendant was authorized by statute to drive on the improved shoulder at such time.

[and]

24. Texas Transportation Code section 545.058 (3) provides that driving on the improved shoulder of a roadway is permissible when and to the extent necessary a driver is decelerating or slowing to make a right turn

from the roadway. The Defendant was in the process of decelerating and slowing to make a right turn from the roadway onto the exit ramp when the second occasion took place; therefore, the Defendant was authorized by statute to drive on the improved shoulder at such time.

(Emphasis added). The video alluded to in the trial court's findings appears in the appellate record.

Upon playing that video, we encountered a rather dark and grainy depiction of the stop and events leading up to it. They obviously occurred at night, on a dimly lit Interstate, on its off-ramp and its adjacent access road. And whether the passenger side tires of the vehicle touched the "fog line" is not easily discerned. No doubt the vehicle approached the line twice, but its wheels may or may not have crossed onto or over it, as noted by the trial court in finding that the tires came in "proximity to" and "possibly touch[ed]" the line.[6] Indeed, what could be seen as a possible touching could well have been nothing more than the shadow of the vehicle moving into the area thought prohibited by the trooper. The lack of clarity is of import here for it requires us to defer to the trial court's interpretation of the events captured in the video.[7] *See Velasquez v. State*, No. 07-12-00002-CR, 2013 Tex. App. LEXIS 8246, at *13 (Tex. App.—Amarillo July 2, 2013, no pet.) (mem. op., not designated for publication)(stating that "we give almost total deference to the trial court's factual determinations unless the video recording indisputably contradicts the trial court's findings").

Yet, if we (like the trial court) also assume *arguendo* that the fog line was touched, our job is not over given the tenor of the State's averment and the trial court's response to it. The former argued that the mere encroachment upon the "fog line"

---

[6] Of note is the absence of any express finding that the tires of the vehicle at bar actually touched the white line or "fog line." Coming in proximity to and possibly touching does not mean the court found they touched the line. They may or may not have.

[7] That the content of the video weighed heavily in the trial court's decision cannot be reasonably disputed. One need only read the transcript of the reporter's record to realize that.

6

equates driving upon an improved shoulder while the latter concluded that "[c]rossing over the portion of the fog line nearest the center of the roadway or upon the fog line is not a violation of Texas traffic law," that is § 545.058(a). So, what we have before us is a question that one could liken to splitting hairs, or in this case, a four inch white line; under § 545.058(a), is one deemed as driving on an improved shoulder by simply touching the "fog line" or by proceeding beyond it? Obviously, the trial court read the statute as requiring the driver to proceed beyond or to cross over the line, not merely to cross onto or touch it. We agree.

Again, the statutes at issue say nothing of a "fog line" or "solid white line." Those words appear nowhere in § 541.302 or § 545.058 of the Transportation Code. Instead, those provisions speak of driving on an "improved shoulder," "shoulder," "paved shoulder," or a "portion of a highway" "adjacent to the roadway . . . designed and ordinarily used for parking . . . [while] distinguished from the roadway by different design, construction, or marking . . . [and] not intended for normal vehicular travel." Yet, some four inch line painted on the roadway by someone whom the record fails to identify is the focal point of not only this case but most every other case involving § 545.058(a). *See, e.g, State v. Dietiker*, 345 S.W.3d 426, 429 (Tex. App.—Waco 2011, no pet.) (noting that the "fog line" was "crossed"); *Thomas v. State*, 420 S.W.3d 195, 200-201 (Tex. App.—Amarillo 2013, no pet.) (noting the same); *Tyler v. State*, 161 S.W.3d 745, 749-50 (Tex. App.—Fort Worth 2005, no pet.) (noting the same).

Nonetheless, all here seem to agree that the "fog line" identifies the boundary between a lane of traffic and its adjacent shoulder. For purposes of this opinion, we will join them and also agree that the "fog line" serves as such a boundary. *See State v. Huddleston*, 164 S.W.3d 711, 714 n.1 (Tex. App.—Austin 2005, no pet.) (suggesting the

7

"fog line" is such a boundary).  Being a "boundary," the line in question can be construed as showing "where an area ends and another area begins."  *Boundary Definition*, MERRIAM-WEBSTER, http://www.merriam-webster.com/dictionary/boundary (last visited November 17, 2015) (defining "boundary" as "something . . . that shows where an area ends and another area begins").  That is, on one side lies the lane of traffic while on the other lies the improved shoulder.  And, if the areas lie on either side of the line then logic suggests that the line must be crossed over before one area has been left and another entered.  Indeed, one does not enter Mexico from Texas until he crosses the boundary between Texas and Mexico.  Nor does one enter Louisiana from Texas until he crosses the boundary between those two States.  While we do not deal with leaving one State for another here, we do deal with geographic areas separated by a line.  So, our analogy to crossing borders between States is no less apt here.  Until a portion of the vehicle driven by Cortez crossed beyond the "fog line" from the area known as his lane of traffic to the area known as the improved shoulder, it cannot be said that he drove on an improved shoulder.  We, like the trial court, interpret § 545.058(a) as requiring as much.  And, again, the trial court determined that the vehicle never crossed over the line, even if one were to assume that the line was touched.[8]

That the State cites to no authority indicating that the "fog line" need only be touched to give rise to a violation of § 545.058(a) is telling, as is our inability to find any such authority.  Indeed, each opinion we discovered wherein a violation of that statute

---

[8] Contrary to the State's contention, the trial court did not find via conclusions of law numbers 23 and 24 that Cortez crossed over or beyond the line.  Neither contains such language.  More importantly, an attempt to somehow imply such a meaning in them would effectively negate the expressed language of conclusion number 22 and finding number 11.  Both 11 and 23 clearly illustrate that Cortez may have encroached upon but did not cross beyond the "fog line."  We cannot construe findings to be in conflict but must reconcile the conflicting findings, and harmonize the judgment with the findings of fact and conclusions of law upon which it is based.  *See Morton v. Hung Nguyen*, 369 S.W.3d 659, 674 (Tex. App.—Houston [14th Dist.] 2012), *rev'd in part on other grounds*, 412 S.W.3d 506 (Tex. 2013)).

was found to have legitimized a traffic stop involved the detainee crossing the line, not simply touching it. *See, e.g,. State v. Dietiker, supra.* None involved simply touching the line.

Similarly inconsequential is the State's allusion to § 541.302(5) of the Transportation Code as proof that the "fog line" itself constitutes part of the shoulder. That provision serves to define the words "highway or street" and, in doing so, states that they mean "the width between the boundary lines of a publically maintained way any part of which is open to the public for vehicular travel." TEX. TRANSP. CODE ANN. § 541.302(5) (West 2011). The State supposes that one of the "boundary lines" must be the "fog line" to the right of the lane of traffic since it is a boundary. That supposition cannot withstand reasonable scrutiny, though.

In § 541.302(5), the legislature is speaking about boundary lines of "a publically maintained way" where "part of which is open to the public for vehicular travel." Obviously, an "improved shoulder" is a publically maintained way given that it means "a paved shoulder." *Id.* § 541.302(6). And, if it is paved then someone must have maintained it at some time. Moreover, one may lawfully engage in "vehicular travel" upon an improved shoulder, as illustrated by § 545.058(a) itself. Again, the statute's language begins with the phrase revealing that "[a]n operator *may drive* on an improved shoulder. . . ." *Id.* § 545.058(a) (emphasis added). If 1) a "highway or street" includes the area between the boundary lines of a "maintained way" which is "open to the public for vehicular travel" and 2) the "improved shoulder" not only is maintained but also subject to being driven upon lawfully by the public, then logically the "improved shoulder" must be part of the "highway or street." So, the "fog line" found left of an

9

improved shoulder and well within the "highway or street" cannot be one of the "boundary lines" of the "highway or street."

Nor do we find significance in one other argument raised by the State. The argument of which we speak involves the trooper's purported mistake in reading § 545.058(a) to prohibit, under certain circumstances, a tire of a vehicle from touching the "fog line" in any minute or incidental way; that, in his estimation, constitutes driving on the improved shoulder. And because this mistake of law purportedly was reasonable, a search and seizure based on it would be legitimate. The argument is founded upon *Heien v. North Carolina,* 574 U.S. __, 135 S. Ct. 530, 190 L. Ed. 2d (2014).

The United States Supreme Court, in *Heien*, reiterated that "searches and seizures based on mistakes of fact can be reasonable." *Heien*, 135 S. Ct. at 536. "An officer might, for example, stop a motorist for traveling alone in a high-occupancy vehicle lane, only to discover upon approaching the car that two children are slumped over asleep in the back seat. The driver has not violated the law, but neither has the officer violated the Fourth Amendment." *Id*. at 534. Yet, that was not the issue before it. Instead, the court was faced with the question of whether "a mistake of law can nonetheless give rise to the reasonable suspicion necessary to uphold the seizure under the Fourth Amendment." *Id.* It answered "that it can." *Id.* It then cautioned that the "Fourth Amendment tolerates only *reasonable* mistakes, and those mistakes— whether of fact or of law—must be *objectively* reasonable." *Id*. at 539 (emphasis in original). "We do not examine the subjective understanding of the particular officer involved . . . [a]nd the inquiry is not as forgiving as the one employed in the distinct context of deciding whether an officer is entitled to qualified immunity for a constitutional

10

or statutory violation."[9]  *Id.*  "Thus, an officer can gain no Fourth Amendment advantage through a sloppy study of the laws he is duty-bound to enforce."  *Id.* at 539-40.

The law at issue in *Heien* involved the number of operating stop lights or lamps that a vehicle had to have.  The officer thought two were needed and decided to stop the vehicle in which Heien rode because only one was operative.  Debate then arose about how many were actually needed, and dispute on that matter existed given the wording of two statutes.  One could be read as requiring only one and another could be read as requiring two.   Due to that circumstance, the Supreme Court concluded that it was "objectively reasonable for an officer in Sergeant Darisse's position to think that Heien's faulty right brake light was a violation of North Carolina law."  *Id.* at 540.

Here, the trooper's mistaken interpretation pertained to whether the boundary between the lane and improved shoulder began at the inside edge of the "fog line."  As much is exemplified by the following exchange between the trooper and defense counsel:

Q.    So –
A.    *The lane ends at the inside of that fog line.*

Q.    I'm sorry?
A.    *The lane - excuse me - the driving lane ends at that fog line.*

Q.    Where do you find that definition? If you're telling the Court that is the law, where do you find that definition that the driving lane ends at the inside edge of a fog line?
A.    *It ends at the fog line.*

Q.    Where does the shoulder begin?
A.    *At the fog line.*

Q.    Which side of the fog line?
A.    *I say inside; you say outside.*

---

[9] As noted by Justice Kagan when concurring in the opinion and judgment of the majority in *Heien*, the standard for gaining qualified immunity is much more lax than that establishing a reasonable mistake of law.  *Heien v. North Carolina,* 574 U.S. __, 135 S. Ct. 530, 541, 190 L. Ed. 2d (2014).

Q. Do you have any law to support your stop, Officer?
A. *Yes, sir, I do.*

Q. Okay. What is that law that you're referring to?
A. *The second violation is committed as he's exiting the roadway and that is the one I stated to him.*

Q. Okay. But, Trooper, I'm talking to you about this one right now.
A. *Yes, sir.*

Q. Okay. What law says where the shoulder begins?
A. *There's not a law - I don't know, to my knowledge, if there's a law that states where the exact lane ends.*

Q. Okay. So you're not aware of a definition that says this is what an improved shoulder is. Correct?
A. *The improved shoulder is the edge of the roadway.*

Q. The part that's on the other side of the line. Right?
A. *Not in my interpretation.*

(Emphasis added).

In reply to the State's argument, we first say that the matter was never preserved below. The State did not claim below that even if touching the line were not a violation of the statute, the stop remained legitimate because the trooper operated under a reasonable mistake of law. The latter concept was not mentioned to the trial court.[10] This is of import because new grounds supporting an argument rejected by the trial court may not be raised for the first time on appeal. *Hull v. State*, 67 S.W.3d 215 (Tex. Crim. App. 2002). And, the first time we hear about the trooper operating under a reasonable mistake of law per *Heien* is in the appellant's brief. Such an omission to preserve cannot be ignored, according to our Court of Criminal Appeals. *Wilson v. State*, 311 S.W.3d 452, 473-74 (Tex. Crim. App. 2010) (op. on reh'g) (prohibiting the

---

[10] The State did suggest that a violation need not be proven for there to be justification to detain, and it offered to provide the court with an opinion supporting that statement. The opinion was *State v. Wise*, No. 04-04-00695-CR, 2005 Tex. App. LEXIS 10796 (Tex. App.—San Antonio Oct. 26, 2005, no pet.)(mem. op., not designated for publication), and it did not involve either *Heien* or a reasonable mistake of law. Nor could it be interpreted as encompassing that argument since, at the time, our very own Court of Criminal Appeals had rejected the proposition that a reasonable mistake of law may still justify a detention. *Robinson v. State*, 377 S.W.3d 712, 722 (Tex. Crim. App. 2012).

reviewing court from considering a matter that was not preserved for review). And, being unpreserved, we cannot consider the argument.

Next, and unlike the situation in *Heien*, the State cites us to no language of a statute that is ambiguous or otherwise susceptible to differing interpretations. It does argue that "[e]ither, TEX. TRANS. CODE 541.302(5) (defining a highway as the portion between the boundary lines) is clear and dispositive of the trooper's interpretation of the statute or the law is, as the trial courts seems [sic] to suggest, ambiguous." But, it does not explain what in § 541.302(5) is ambiguous. *See Liverman v. State*, 470 S.W.3d 831, 836 (Tex. Crim. App. 2016) (stating that an ambiguity exists when statutory language may be understood by reasonably well-informed persons in two or more different senses). We are not told how the language of § 541.302(5) can be understood in two or more different senses. Nor are we told how one of those senses encompasses the notion that simply touching the white line equals driving on an improved shoulder.

Indeed, the provision actually lacks relevance. The traffic violation at issue concerns the act of driving upon an "*improved shoulder* to the right of the main traveled portion of a roadway." TEX. TRANSP. CODE ANN. § 545.058(a) (West 2011) (emphasis added). As discussed above, § 541.302(5) of the same Code defines "highway or street," not an "improved shoulder." As also mentioned before, the phrase "improved shoulder" means "a paved shoulder," *id.* § 541.302(6), while "shoulder" means the "portion of a highway that is" 1) "adjacent to the roadway," 2) "designed or ordinarily used for parking," 3) "distinguished from the roadway by different design, construction, or marking," and 4) "not intended for normal vehicular travel." *Id.* § 541.302(15). How the definition of "shoulder" or "improved shoulder" can be interpreted in differing ways goes unmentioned by the State. Similarly missing is explanation of how or why those

definitions can be read as meaning that one need only touch some part of the "fog line" to violate § 545.058(a) of the Code. Nor can we find one.

Thirdly, and most telling, is the absence of any judicial authority supporting the officer's apparent interpretation of § 545.058(a) as justifying the belief that touching the line is all that is required. And rather than fill the void, the State endeavors to show why pre-existing opinions contradicting its position mean nothing. For instance, in *State v. Hanrahan*, No. 10-11-00155-CR, 2012 Tex. App. LEXIS 1271, at *15-18 (Tex. App.— Waco Feb. 15, 2012, no pet.) (mem. op., not designated for publication), whether the officer was justified in stopping Hanrahan for violating § 545.058(a) was in play. The trial court viewed the rather unclear video of the incident and said "I couldn't even tell [that she] was driving on the shoulder until he [Officer Bell] pointed it out, and her tires might have—I'm not even sure they crossed all the way across the white line. If that's sufficient to call it driving on the shoulder, I don't know if I have ever driven a car when I didn't justify getting stopped." *Id.* at *4-5. Despite this evidence that the accused at least touched the white line with her tires, the trial court nonetheless found that the accused "did not travel on the improved shoulder of the highway prior to the stop." *Id.* at *6. Upon reviewing the record, the appellate court concluded that the State failed to present evidence demonstrating that "the trial court abused its discretion in granting appellee's motion to suppress." *Id.* at *17-18. Yet, here, the State deems the opinion unworthy of precedential value since it was "unpublished" and "[t]he Tenth Court affirmed the suppression as a matter of deference to the trial court's credibility determination, not on the question of law issue."[11] Needless to say, the portions of

---

[11] We find interesting the State's intimation that opinions it finds detrimental to its position should be ignored because they are unpublished, however, unpublished opinions supportive of its position, like *State v. Wise*, *supra*, cited to the trial court, should be considered. And, that seems to be the fallacy of the unpublished opinion. If founded upon legal authority and is otherwise analytical in the way it

14

*Hanrahan* we quoted above speak for themselves; the viewing court found that the trial court did not abuse its discretion in granting the motion to suppress despite evidence that the white line was touched.

The facts and outcome in the "published" opinion of *Scardino v. State*, 294 S.W.3d 401 (Tex. App.—Corpus Christi-Edinburg 2009, no pet.), are more telling. It too involved the purported violation of § 545.058(a) of the Transportation Code. There, the DPS trooper actually testified that Scardino "crossed the fog line" once. *Id.* at 403-404. Despite this testimony, the appellate court concluded that the trooper never testified that Scardino "'drove' on the shoulder" and then reversed the trial court's decision to deny the motion to suppress. *Id.* at 406. Apparently to that court as well, evidence of the fog line being traversed or touched is not evidence that the accused drove on the shoulder. Yet, the State minimizes the impact of the opinion by suggesting that the "Court's analysis appears to focus on the lack of sustained driving on the shoulder rather than whether he was on the shoulder at some point." We have no evidence of sustained driving on the shoulder by Cortez here, only an instance of possibly touching the fog line next to the shoulder, but that did not stop either the State or trooper from concluding that Cortez violated § 545.058(a), despite *Scardino* having been issued years before the incident at bar occurred. To paraphrase what mothers often say to their children: "you can't have your cake and eat it too."

Next, and worth reiteration is another observation made earlier. The trial court did not even find that Cortez's vehicle touched the "fog line." It, in effect, hedged its finding by indicating that while the possibility of a touch may exist, the line was not

---

addresses an issue, there is no legitimate reason to ignore the writing simply because it is labeled "unpublished" yet easily found on commonly searched websites such as Westlaw and Lexis*.*

crossed *in toto.* Without such a finding, it matters not whether an officer could reasonably believe that touching the line was a violation of § 545.058(a).

Placing the actual argument of both the State and officer into perspective further shows the unreasonableness of their proposition. The statute at issue permits one to "drive on an improved shoulder" in some situations. So, it purports to regulate the act of driving on the shoulder. Even if we were to concede that the four inch "fog line" demarcates the boundary between the shoulder and driving lane, nothing in § 545.058(a) is said of driving on the boundary line between the lane and shoulder. We would have to rewrite the provision to interject that language into it, and such is an ability denied the judiciary. *See Cadena Comercial USA Corp. v. Tex. Alcoholic Bev. Comm'n*, 449 S.W.3d 154, 168 (Tex. App.—Austin 2014, pet. granted) (stating that a court may not rewrite a statute). And, though we may interpret statutes, it would be asking us to do the unreasonable and impermissible if we were to ignore both the plain words written by the legislature and intent illustrated by those words. *See Note Inv. Grp., Inc. v. Assocs. First Capital Corp.,* 476 S.W.3d 463, 476 (Tex. App.—Beaumont 2015, no pet.) (stating that a statute is construed in a manner to effect the legislature's intent as evinced by the words written). Both the plain words in and intent of § 545.058(a) encompass the act of driving on the improved shoulder under certain circumstances. A momentary touch of some fraction of a "fog line" or boundary hardly connotes driving upon either the boundary or the area on the other side of the boundary. More importantly, the trooper himself, who apparently is charged with enforcing and undoubtedly trained in enforcing traffic codes, could recall no law justifying such an interpretation of § 545.058(a) when pressed by defense counsel. As

said in *Heien*, the mistake of law must be reasonable. The mistaken interpretation of § 545.058(a) offered by the State here falls outside that realm.

Without contrary legal authority to support contrary positions or without ambiguity in a law causing it to be susceptible to differing interpretations, there is no basis upon which to invoke *Heien* and the claim of reasonable mistake of law. The State has shown us neither. Nor has it attempted to explain how any legal authority supports the trooper's notion that the inside of the "fog line" is the boundary between the lane and shoulder and touching it in any manner violates § 545.058(a). It is not enough to merely say that the trooper believed that to be the law; this is so because his subjective beliefs are irrelevant. *Heien*, 135 S. Ct. at 539 (stating that "[w]e do not examine the subjective understanding of the particular officer involved"). The position asserted must have some basis in rationality, even if wrong. That proffered here does not.

In sum, we find reason in the words of the trial court in *State v. Tarvin*, 972 S.W.2d 910 (Tex. App.—Waco 1998, pet. ref'd). Driving is an exercise in controlled weaving. *Id.* at 911. It is difficult enough to keep a straight path on the many dips, rises, and other undulations built into our roadways. To adopt the State's interpretation of § 545.058(a) and permit a trooper to stop someone for the slightest touch of a "fog line" while maneuvering over those undulations would push us further into the "strange days" mentioned earlier. We choose not to do that.

The factual record before us supports the trial court's finding that the vehicle Cortez drove failed to cross over the "fog line" onto the improved shoulder. Furthermore, the trial court's interpretation of § 545.058(a) comports with ours. Driving onto an improved shoulder requires something more than driving upon the four inches of a "fog line," like Cortez "possibly" may have done here. *See Scardino v. State*, *supra*;

17

*see also State v. Hanrahan, supra*; *State v. Rothrock,* No. 03-09-00491-CR, 2010 Tex. App. LEXIS 6356 (Tex. App.—Austin Aug. 5, 2010, no pet.)(mem. op., not designated for publication).  Consequently, the trial court did not abuse its discretion in granting the motion to suppress, and we affirm that order.


                                                  Brian Quinn
                                                  Chief Justice


Publish.