Richardson, J., delivered the opinion of the Court in which Hervey, Alcala, Newell, Keel, and Walker, JJ., joined.
Appellee, Jose Luis Cortez, was stopped by a State Trooper for unlawfully driving on the improved shoulder of the highway[1] because the tires on Cortez's minivan purportedly touched the white painted "fog line" separating the roadway from the shoulder. Upon searching Cortez's vehicle, the Trooper found drugs and arrested Cortez.[2] Finding that the Trooper did not have a lawful basis for the traffic stop, the trial court granted Cortez's motion to suppress. The court of appeals upheld the trial court's suppression order. We agree that the Trooper did not have a reasonable basis to stop Cortez's vehicle. We affirm the judgment of the court of appeals.
OVERVIEW
After a hearing on the motion to suppress, the trial court issued detailed findings, concluding that, (1) it was not clear from the Trooper's dashcam video whether Cortez's vehicle even touched the fog line; (2) even if Cortez's vehicle touched the fog line, there was no proof that he crossed over the fog line and drove on the improved shoulder; and (3) even if Cortez drove on the improved shoulder, he was statutorily entitled to do so.
The court of appeals upheld the trial court's suppression order, concluding that driving on an improved shoulder requires more than the mere touching of the fog line.[3] The State urged in its petition for discretionary review that touching the fog line does equate to driving on the improved shoulder and argued that the court of appeals erred to hold otherwise.
Although we generally limit our review to " 'decisions' of the court of appeals," this is one of the "exceptional case[s]" where, in the name of judicial economy, we are able to, and will, dispose of the case.[4]
*201 There is no need to send this case back to the court of appeals to look at it a third time.[5] The trial court thoroughly covered in its written Findings of Fact and Conclusions of Law the factual and legal issues related to the stop. The State challenged the trial court's entire decision on appeal, briefed all of the issues before the court of appeals, and the court of appeals has twice upheld the trial court's suppression order.[6] We have kicked the can down the road long enough. It is time that we dispose of the core issue here, which is whether, under the totality of these circumstances, the Trooper had an objectively reasonable basis to stop Cortez's vehicle. We hold that he did not. The record supports the conclusions reached by the trial court. We affirm the judgment of the court of appeals.
THE MOTION TO SUPPRESS
At the motion to suppress hearing, the Trooper who pulled Cortez over testified that he began following Cortez's minivan down Interstate 40 because it had "a newer registration" on it, and because it was "[a] minivan, clean, with the two occupants in it:"
Q. So you're telling the Court that because you see a van, it's clean and it's got two people in it, that was [sic ] indicators of potential criminal activity for you?
*202 A. Yes, sir, they are....
The Trooper testified that he ultimately stopped the minivan because it had twice driven on an improved shoulder in violation of Texas Transportation Code, section 545.058(a). According to the Trooper, "on two different occasions" he observed Cortez's vehicle drive on the improved shoulder-when Cortez "drifted across" the line when the Trooper was driving next to Cortez in the left lane, and when Cortez "came across the white stripe" when exiting the highway.
At the suppression hearing, the State produced a video of the stop. It was played for the trial court, and in response to several questions on cross examination, the Trooper pointed out on the video that Cortez crossed the white line: "[Y]ou see him fade to the right-hand side, crossing the white line;" "Casting a shadow, it completely crossed the white line here;" "The tire crossed the line;" "It is my testimony that he crossed the white line on two different occasions;" "The white line (indicating) the break in the white line-this is the fog line. The vehicle crosses on two different occasions. Once, being here; the second, being at the exit."
On cross-examination, however, it became evident that the Trooper believed that merely touching the fog line constituted driving on the shoulder:
Q. Can you walk up to the board and show the court what you claim to be a violation.
A. With my-with the naked eye, the camera doesn't show it as greatly, but right here, he's on the-he's on the white fog line right there.
* * *
Q. So you're saying that he's on the shoulder-driving on the improved shoulder right now?
A. He's on the fog line right now, yes, sir.
* * *
A. The lane ends at the inside of that fog line.
Q. I'm sorry?
A. The lane-excuse me-the driving lane ends at that fog line.
Q. Where do you find that definition? If you're telling the court that is the law, where do you find that definition that the driving lane ends at the inside edge of a fog line?
A. It ends at the fog line.
Q. Where does the shoulder begin?
A. At the fog line.
Q. Which side of the fog line?
A. I say inside; you say outside.
Q. Do you have any law to support your stop, Officer?
A. Yes, sir, I do.
Q. Okay. What is that law that you're referring to? ... What law says where the shoulder begins?
A. There's not a law-I don't know, to my knowledge, if there's a law that states where the exact lane ends.
Q. Okay. So you're not aware of a definition that says this is what an improved shoulder is. Correct?
A. The improved shoulder is the edge of the roadway.
Q. The part that's on the other side of the line. Right?
A. Not in my interpretation.
In granting Cortez's motion to suppress, the trial court made the following findings and concluded that driving on the fog line does not constitute crossing over the fog line and into the shoulder:
• As [the Trooper's] vehicle approached and pulled into the left hand lane, defendant's vehicle moved toward the improved shoulder.
*203 • A short time later, Defendant's vehicle moved toward the improved shoulder a second time as the Defendant's vehicle exited the Interstate to the right at a marked exit ramp.
• The State produced no evidence that [the Trooper] observed, or believed he had observed, any portion of the Defendant's vehicle pass outside the outermost edge of the fog line.
• The improved shoulder of a state roadway begins at the point of the fog line which is furthest from the center of the roadway.
• The defendant's vehicle did not cross outside the outermost edge of the fog line onto the improved shoulder of the roadway. Crossing over the portion of the fog line nearest the center of the roadway or upon the fog line is not a violation of Texas traffic law; therefore the vehicle was not operated on the improved shoulder of the roadway on either occasion made the basis for [the Trooper's] traffic stop.
In affirming the trial court's suppression order, the court of appeals agreed that simply touching the fog line does not constitute driving on the shoulder.[7]
ANALYSIS
At the heart of Cortez's motion to suppress is the Fourth Amendment. The "touchstone of the Fourth Amendment is reasonableness."[8] The issue resolved by the trial court and presented by the State on direct appeal is the issue that we are addressing today-whether the Trooper's stop was objectively reasonable.[9] "A trial court's ruling on a motion to suppress is reviewed on appeal for abuse of discretion."[10] We can sustain the trial court's decision if we conclude that the decision is correct under any applicable theory of law.[11] A trial court's ruling should be reversed only if it is arbitrary, unreasonable, or "outside the zone of reasonable disagreement."[12] We use a bifurcated standard of review to evaluate whether the totality of circumstances is sufficient to support an officer's reasonable suspicion of criminal activity. First, we "give 'almost total deference to the trial court's determination of the historical facts that the record supports,' and second, we review de novo the trial court's application of the law to facts, which do not turn on *204 credibility and demeanor."[13] Moreover, "we review de novo whether the totality of circumstances is sufficient to support an officer's reasonable suspicion of criminal activity."[14]
Each case involving an officer's stop must be evaluated objectively, under the totality of the circumstances, to determine whether the officer acted reasonably. "An officer may make a warrantless traffic stop if the 'reasonable suspicion' standard is satisfied."[15] "Reasonable suspicion exists if the officer has specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaged in criminal activity."[16] We review a reasonable suspicion determination by considering the totality of the circumstances.[17] When a police officer stops a defendant without a warrant, the State has the burden of proving the reasonableness of the stop at a suppression hearing.[18] Because Cortez was arrested without a warrant, the State had the burden to prove that the initial detention was legal.[19]
A. It is not clear that Cortez's vehicle even touched the fog line.
Texas Transportation Code, section 545.058(a) provides that,
(a) An operator may drive on an improved shoulder to the right of the main traveled portion of a roadway if that operation is necessary and may be done safely, but only:
(1) to stop, stand, or park;
(2) to accelerate before entering the main traveled lane of traffic;
(3) to decelerate before making a right turn;
(4) to pass another vehicle that is slowing or stopped on the main traveled portion of the highway, disabled, or preparing to make a left turn;
(5) to allow another vehicle traveling faster to pass;
(6) as permitted or required by an official traffic-control device; or
(7) to avoid a collision.[20]
"Improved shoulder" is defined as "a paved shoulder."[21] "Shoulder" is defined as "the portion of a highway that is:
(A) adjacent to the roadway;
(B) designed or ordinarily used for parking;
(C) distinguished from the roadway by different design, construction, or marking; and *205 (D) not intended for normal vehicular travel."[22]
It is a violation to "drive on an improved shoulder"-thus an officer would have reasonable suspicion to stop a vehicle that was driving on an improved shoulder-if it appears that driving on the improved shoulder was not necessary to achieving one of the seven approved purposes or it appears that driving on the improved shoulder could not be done safely.[23]
The record, which includes the dashcam video, supports the trial court's finding that, as Cortez was driving in the right lane of the highway, it is not clear that Cortez's tires even touched the white fog line. Thus, regarding the first "offense" observed by the Trooper, it cannot be determined how close Cortez's right tires came to the white fog line. The video and the testimony of the Trooper reflect that the Trooper had begun following Cortez's vehicle-a validly registered clean minivan with two people in it-from behind because he suspected criminal activity. The officer then pulled into the left lane, accelerating to seemingly pass Cortez's vehicle, and that seems to be where he was when he observed Cortez "crossing" the fog line:
Q. So, Trooper, tell the Court exactly where my client was at the time you say you witnessed the first violation.
A. The first violation was just-just as I'm paralleling him, I'm off his left quarter. Actually, I usually run the license plate at that point. I'm sitting there and you see him fade to the right-hand side, crossing the white line.
But, we conclude that, from the vantage point of driving in the left lane, next to a vehicle in the right lane, it cannot be seen, and there is no way to know, that the vehicle in the right lane is touching the fog line on that vehicle's right.[24] Thus, the dashcam video dispel's the Trooper's testimony that Cortez crossed the fog line.
B. Even if Cortez's vehicle did touch the fog line, in this case he was still not driving on the improved shoulder in violation of the statute.
The trial court found that Cortez's vehicle did not "drive on an improved shoulder" because it did not cross over the fog line onto the shoulder. The court of appeals agreed, holding that momentarily touching the fog line does not constitute driving on the improved shoulder.[25] Although "shoulder" is defined by statute, the statutory definition does not include the term "fog line" or mention in any way the line separating the shoulder from the roadway.[26]
*206 The State argues that, because the fog line is part of the shoulder itself, then touching the fog line is "driv[ing] on the improved shoulder." However, we decline to give such a broad interpretation to section 545.058(a). "Criminal statutes outside the penal code must be construed strictly, with any doubt resolved in favor of the accused."[27] We have a duty to narrowly construe statutes to avoid a constitutional violation.[28]
But, it is not necessary that we establish a definitive rule regarding whether every fog line painted on a roadway is part of the roadway or part of the shoulder in order to assess the objective reasonableness of the Trooper's traffic stop in this case. As the court of appeals pointed out, "[d]riving is an exercise in controlled weaving. It is difficult enough to keep a straight path on the many dips, rises, and other undulations built into our roadways."[29] Even a driver who is sober, alert, and careful may occasionally drift within their lane only because the roadway surface is not perfectly smooth. Moreover, drivers are not able to see if their tires are touching the fog line. They are likely to veer over at some point and touch the fog line alongside the roadway without being aware they have done so. Some lane boundaries have raised reflective pavement markers or road grooves in the asphalt, rather than painted lines, to alert drivers when they are veering too close to another lane or are about to cross over into the shoulder. Sometimes these road grooves are on the fog line, sometimes they are alongside the outer edge of the painted fog line. Thus, we choose to evaluate the totality of the circumstances in this case to determine the reasonableness of the Trooper's stop.
Based on the totality of the circumstances in this case, we conclude that the court of appeals did not err in holding that, if Cortez's tires touched the fog line at all, which is debatable, his momentary touch of the fog line, without any other indicator of criminal activity, was not enough to justify the stop of Cortez's minivan for driving on an improved shoulder. This decision is consistent with the interpretation given to section 545.058(a) by Texas appellate courts and courts outside this jurisdiction that have addressed this issue and have held that a person drives on the improved shoulder when they cross over the fog line.[30]
*207 C. Even if Cortez's vehicle crossed over the fog line, he was statutorily permitted to do so.
Finally, the statute provides for permissible reasons for a person to drive on the improved shoulder. Section 545.058(a) allows a driver to drive on an improved shoulder under seven listed circumstances:
(1) to stop, stand, or park;
(2) to accelerate before entering the main traveled lane of traffic;
(3) to decelerate before making a right turn;
(4) to pass another vehicle that is slowing or stopped on the main traveled portion of the highway, disabled, or preparing to make a left turn;
(5) to allow another vehicle traveling faster to pass;
*208 (6) as permitted or required by an official traffic-control device; or
(7) to avoid a collision.[31]
The trial court, having viewed the video, found that even if Cortez had crossed into and driven on the improved shoulder, he was statutorily entitled to do so:
• Texas Transportation Code section 545.058(5) [sic ] provides that driving on the improved shoulder of a roadway is permissible under the circumstances when and to the extent necessary a driver is being passed by another vehicle. The first occasion in which the officer testified that the Defendant drove onto the improved shoulder occurred after the officer's vehicle entered the passing lane and accelerated toward the Defendant's vehicle; therefore, the Defendant was authorized by statute to drive on the improved shoulder at such time.
• Texas Transportation Code section 545.058(3) [sic ] provides that driving on the improved shoulder of a roadway is permissible when and to the extent necessary a driver is decelerating or slowing to make a right turn from the roadway. The Defendant was in the process of decelerating and slowing to make a right turn from the roadway onto the exit ramp when the second occasion took place; therefore, the Defendant was authorized by statute to drive on the improved shoulder at such time.
Regarding the first "offense" observed by the Trooper, as the trial court found, because section 545.058(a)(5) allows a driver to drive on an improved shoulder to "allow another vehicle traveling faster to pass," and since it appeared that the Trooper was intending to pass Cortez's vehicle on the left, Cortez was statutorily permitted to drive on the improved shoulder during that very brief period of time. Regarding the second "offense" observed by the Trooper, the dash cam video shows Cortez driving steadily in the right hand lane on the highway, turning on his right turn signal to exit the highway. By the time that there was any type of contact between Cortez's right tires and the white fog line, Cortez was at the end of the exit ramp, almost to the access road, and he was still signaling a right turn. Because section 545.058(a)(3) allows a driver to drive on an improved shoulder "to decelerate before making a right turn," and since it was clear that Cortez was intending to exit the highway and turn right, Cortez was statutorily permitted to drive on the improved shoulder for that brief period of time.[32] The trial court's findings-that *209 Cortez's driving on the improved shoulder was authorized by Transportation Code sections 545.058(a)(3) and (a)(5) -are supported by the record.
CONCLUSION
We hold that the record supports the trial court's finding that, under the totality of the circumstances, the Trooper did not have an objectively reasonable basis to stop Cortez's vehicle. Because the trial court initially suppressed the search, and the court of appeals twice unanimously upheld that decision, we conclude that, under these facts, the officer was not objectively reasonable in his belief that a violation of the law had been committed by Cortez. We affirm the judgment of the court of appeals.
Newell, J., filed a concurring opinion in which Keel, J., joined.
Keller, P.J., filed a dissenting opinion in which Keasler, J., joined.
Yeary, J., filed a dissenting opinion.
Newell, J., filed a concurring opinion in which Keel, J., joined.
Today, the Court finally holds that the trial court properly suppressed the evidence flowing from the traffic stop in this case. The Court rightly determines that "touching the line" does not constitute "driving on the improved shoulder." The Court recognizes that there is no need to send the case back a third time for the court of appeals to address whether any encroachment upon the improved shoulder in this case violated a traffic law. I agree with and join the Court's opinion.
First, the Court decides as a matter of judicial economy to address whether Appellee properly drove upon the improved shoulder to either allow another vehicle to pass or to decelerate before making a right turn. This Court has held in the past that we have the authority to review "decisions" of the court of appeals in our discretionary review capacity.[1] But this rule is not without exception. Recently, for example, in Salinas v. State , we decided, without being asked, the legal issue of whether declaring a statute unconstitutional should have a retroactive effect.[2] Yet, that issue was not part of the court of appeals' decision below nor was it one of the issues *210 before us on discretionary review.[3] We addressed the issue without granting a ground of review on our own motion or giving the parties a chance to brief the issue.[4] If that was acceptable in Salinas , it is in this case as well.
Second, the Court sensibly focuses on the reasonableness of the traffic stop rather than trying to decide what part of the road the "fog line" belongs to. As the Court notes, the term "fog line" does not appear in the Transportation Code. Chief Justice Quinn allowed that "arguably, the 'fog line' may be the 'different ... marking' referred to in § 541.302 (15)."[5] But that's all it is, an argument.
Section 541.302(15) of the Transportation Code defines "shoulder" to mean "that portion of a highway" 1) "adjacent to the roadway," 2) "designated or ordinarily used for parking," 3) "distinguished from the roadway by different design, construction, or marking," and 4) "not intended for normal vehicular travel."[6] One can read "distinguished from the roadway by ... marking" as meaning that the marking must actually be "on the shoulder," but that additional clarification does not come from the text of the statute. Describing the shoulder itself as "adjacent" to the roadway and "not intended for normal vehicular travel" tells us about the shoulder, not where the roadway ends and the improved shoulder begins. This text tells us nothing about how a shoulder may be distinguished from the roadway by markings. Neither is there any legislative history regarding this portion of the statute. Markings on the roadway indicating the edge of the roadway can distinguish the shoulder from the roadway just as easily as markings on the shoulder could indicate the beginning of the shoulder. At the very least, it's a tie.
In 2015, our Legislature passed House Bill 1396 which added Section 311.035 to the Texas Government Code and codified the rule of lenity for offenses outside the Penal Code.[7] Under the text of this section, a statute that creates or defines a criminal offense shall be construed in favor of the actor where any part of the statute is ambiguous.[8] As late Justice Scalia of the United States Supreme Court put it, "Under a long line of our decisions, the tie must go to the defendant."[9] Here the text, structure, and history of the statute in question provide us no resolution to the inherent ambiguity in the statute itself.[10] If we are required to draw a line in this case, *211 we are required to draw the line in favor of Appellee rather than rely upon our own line-drawing gestalt.
Finally, the Court's resolution of the case is consistent with previous precedent interpreting this statute. In Lothrop v. State , we rejected the argument that Section 545.058(a) set up a "shifting-burden, self-defense-style framework" in which driving on an improved shoulder, regardless of the circumstances, is prima facie evidence of an offense.[11] We noted that in this statute, "the legislature explicitly made certain behavior legal" so allowing that behavior to serve as the basis of a traffic stop or arrest would violate the Legislature's intent.[12] For police to stop a motorist for driving on an improved shoulder, there must be some showing that the driving was not necessary to effectuate one of the seven approved purposes listed in Section 545.058(a).[13] And yet, allowing the mere touching of the improved shoulder to constitute driving on the improved shoulder would effectively reverse this holding and resurrect the shifting-burden, self-defense-style framework we rejected in Lothrop .
Someday, perhaps soon, our cars will drive themselves. When that day comes, determining with molecular-level precision where a roadway ends and an improved shoulder begins may be necessary. But cars are still driven by people, and the Court focuses on what the statute focuses on, whether the driving at issue was necessary and safe. With these thoughts I join the Court's opinion.
Keller, P.J., filed a dissenting opinion which Keasler, J., joined.
At issue in this case is whether an officer had a sufficient basis to stop a vehicle when he suspected that the vehicle had touched the solid white line on the edge of the roadway (the "fog line"). The Court gives three reasons for holding that the officer did not have a sufficient basis for the stop: (1) it is not clear that appellee's vehicle touched the fog line, (2) touching the fog line does not constitute "driving on the improved shoulder," and (3) driving on the improved shoulder was lawful here to allow another vehicle to pass or for appellee's vehicle to decelerate before making a right turn. The first reason, even if correct, does not support the Court's resolution, the second reason is incorrect, and the third reason was not addressed by the court of appeals and has not been raised as a ground for discretionary review. The Court's decision to rely on its third reason is especially troubling, because the State was not put on notice that it needed to brief the issue before this Court. Before deciding this third issue adversely to the State, the Court should have at least granted review of that issue on its own motion and ordered briefing.
A. Whether Appellee's Vehicle Touched the Fog Line
No court has ever held that Appellee's vehicle did not touch the fog line. Three *212 courts have now held that it was unclear whether the vehicle touched the fog line. Specifically, the trial court found that the traffic-stop video showed Appellee's vehicle's "right rear tire (or its shadow) ... to come in the proximity to and possibly touch the inside portion or more of the white line delineating the roadway from the improved shoulder ... but not to extend past the ... outermost edge of the fog line." So what does that mean? It means that the officer had reason to suspect that the vehicle touched the fog line. A traffic stop need only be supported by "reasonable suspicion."[1] "Reasonable suspicion exists if the officer has 'specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaging in criminal activity.' "[2] The officer does not need proof beyond a reasonable doubt that a traffic violation has occurred to conduct a traffic stop.[3] The officer does not even need proof by a preponderance of the evidence.[4] In fact, an officer does not even need probable cause.[5] All the officer needed in order to conduct a stop was to be aware of circumstances that establish reasonable suspicion of a traffic violation. If touching the fog line constituted driving on the improved shoulder in violation of the law, then the officer needed only reasonable suspicion that Appellee's vehicle touched the fog line. By saying it is unclear whether the vehicle touched the fog line, the Court is essentially conceding that there was reasonable suspicion to believe that it had.
B. Whether Touching the Fog Line is Driving on the Improved Shoulder
The State's ground for review asks where the improved shoulder begins in relation to the fog line: "Does the improved shoulder of a highway begin at the inside edge of the 'fog line,' the outside edge, or somewhere in between?" We have some leeway to address the State's grounds without being restricted to its characterization of what is at issue. We can ask whether the fog line is part of the roadway, part of the shoulder, or a no-man's land in between. We can also ask whether touching the fog line constitutes "driving" on it. Both of these issues were addressed by the court of appeals.
The State contends that the fog line is part of the improved shoulder, so that driving on the fog line is tantamount to driving on the improved shoulder. The Court does not address this question. Because the Court does not, I only briefly address why I agree with the State on this issue. Under the Transportation Code, the improved shoulder is defined as being "adjacent" to the roadway, is distinguished by, among other things, a different "marking" than the roadway, and is not intended for normal vehicular travel.[6] Because the fog line may sometimes be the only thing that *213 distinguishes the shoulder from the roadway and a boundary marking is not something that is normally supposed to be driven upon, I would conclude that the fog line must be part of the shoulder.
The Court sidesteps this question and instead decides that touching the fog line does not constitute driving upon it. But nothing in the statute that proscribes driving on an improved shoulder suggests that a certain amount of time must pass before a vehicle's contact with the shoulder constitutes driving on it. Some of the allowable purposes for driving on a shoulder can involve a short duration, such as "decelerat[ing] before making a right turn" or "avoid[ing] a collision."[7] How much time must a police officer let pass before a vehicle's contact with the fog line becomes driving on it? Must the officer count to three? Must he wait for a minute to pass? A time requirement would be arbitrary, but the failure to specify a time requirement will leave officers without guidance on when a stop is justified. The solution to this quandary, however, is simply: any amount of time in which a moving vehicle is in contact with the fog line constitutes driving on the fog line.
C. Whether Driving on the Improved Shoulder was Justified
The trial court found that driving on the improved shoulder was justified to allow another vehicle to pass or for appellee's vehicle to decelerate before making a right turn. The court of appeals never addressed whether this holding was correct. The Court decides to address the issue because it concludes that one remand in this case is enough and that we should now review any issue the court of appeals could have reviewed, whether or not it actually did so. Ordinarily, "in our capacity as a discretionary review court, we review 'decisions' of the courts of appeals," and deviate from that practice only in an exceptional case in the name of judicial economy when the proper resolution of a "remaining issue" (after resolving the issue on which review was granted) is clear.[8] While we can be mindful of the danger of leaving a case in "appellate orbit," it is not clear why one prior remand would constitute an extraordinary circumstance sufficient to allow us to resolve an issue never before addressed by the court of appeals. The Court also does not explain why the resolution of this issue is so obvious that we should forego briefing by the party adversely affected by the Court's holding.[9] Before the Court decides an issue raised on its own motion, it ought to explicitly grant a ground for review on its own motion and order briefing on the matter.[10]
I respectfully dissent.
Yeary, J., filed a dissenting opinion.
Today the Court affirms the judgment of the court of appeals without even reviewing the actual legal basis for that court's ruling. It does so in the name of "judicial economy." Majority Opinion at 200 & n.4. But, in doing so, the Court fails *214 to adhere to our narrow precedents that allow for the discretionary review of issues not decided by the court of appeals. Because "the record supports the conclusion reached by the trial court[,]" the Court today "affirm[s] the judgment of the court of appeals." Majority Opinion at 200. Thus, the Court bypasses the intermediate appellate process entirely, essentially deciding issues de novo , without reviewing the actual basis for the court of appeals' judgment at all. See id. at 206 ("[I]t is not necessary that we establish a definitive rule regarding whether every fog line painted on a roadway is part of the roadway or part of the shoulder....").[1]
A discretionary review court culls through the many and sundry opinions of the lower appellate courts, granting review of only a select few appropriate cases with the aim to optimize its ability to isolate important legal issues and write cogent judicial opinions that will set clear jurisprudential precedents for the lower courts. Today the Court, instead, essentially remakes itself and assumes the role of a super-appellate court, as though our proper function was to ensure that all individual cases are rightly and expeditiously decided, regardless of the proper roles assigned to the various courts in our hierarchical judicial system.[2] In my view, that is an untenable model for discretionary review. See Arcila v. State , 834 S.W.2d 357, 360 (Tex. Crim. App. 1992), overruled on other grounds by Guzman v. State , 955 S.W.2d 85 (Tex. Crim. App. 1997) ("Our principal role as a court of last resort is the caretaker of Texas law, not the arbiter of individual applications.").
If the issue were properly before us, I might well agree with the Court's ultimate conclusion that the State failed (at least) to establish, as was its burden, that the trooper had at least some reason to believe that Appellee was not justified in driving on the shoulder, in contemplation of the statute. Majority Opinion at 205 & n.23 (citing Lothrop v. State , 372 S.W.3d 187, 191 (Tex. Crim. App. 2012) ); ids="7123999" index="3" url="https://cite.case.law/sw3d/372/187/#p191">id. at 207-09. After all, an argument could be made that *215 an officer may not himself conjure the circumstances to cause a citizen to appear to violate some traffic law and then rely upon the apparent violation to justify a traffic stop.[3] The court of appeals might well reach the same conclusion, were we to remand the cause to that court (as we should). But that issue is not currently before us in our discretionary review capacity. In that capacity, as we have said on countless occasions, we typically review only "decisions" of the courts of appeals. See, e.g. , Stringer v. State , 241 S.W.3d 52, 59 (Tex. Crim. App. 2007) ("In our discretionary review capacity we review 'decisions' of the courts of appeals. Thus, the State's alternative arguments are not ripe for our review. Because we reverse the judgment of the court of appeals, the court shall consider these arguments on remand.") (some internal quotation marks omitted).
It is true, as the Court frankly admits, that we have sometimes reached an issue in addition to the issue upon which we granted discretionary review, even when that issue was not expressly decided below-but only when the proper resolution of the additional issue has been deemed "clear." Majority Opinion at 200-01 n.4. But even while it acknowledges this to be the state of the law, the Court does not claim, much less attempt to demonstrate, that the proper resolution of the issues upon which it disposes of the case are so manifestly self-evident that it is appropriate, for the sake of judicial economy, to suspend our ordinary procedure, bypass the usual intermediate appellate resolution, and resolve them de novo. Inclined though I may be to agree with the Court's resolution of at least some of the issues the Court reaches today, they do not seem so indisputably clear to me.
In any event, I am unaware of any case in which we have ever deliberately resolved a case based upon issues that are different from the issue we granted discretionary review to address-and for the express purpose of avoiding resolution of the issue we actually granted review of. What sense does it make to ignore the issue that we ordered the parties to brief, having deemed it important enough to the jurisprudence of the State to implement our own judicial resources in the first place?[4] I do not see how, in the broader scheme of things, this serves the cause of judicial economy. Yet that is what the Court does today.
I object to the misapplication of scarce judicial resources in this case. The Court should address the issue we granted review to resolve and then, if need be, remand the cause (once again) to the court of appeals to address any remaining, as-yet-unaddressed *216 issues necessary to the ultimate resolution of the case. Because the Court does not, I respectfully dissent.

Texas Transportation Code, section 545.058(a) provides that "[a]n operator may drive on an improved shoulder to the right of the main traveled portion of a roadway if that operation is necessary and may be done safely," but only under certain enumerated circumstances. Tex. Transp. Code § 545.058(a).

Cortez was charged with possession with intent to deliver methamphetamine in an amount over 400 grams. The drugs were found hidden in the spare tire of the vehicle, which Cortez allowed the Trooper to search. However, the consent of the search, the severity of the charged offense, and the quantity of the drugs found cannot justify an illegal stop by the Trooper. See , e.g. , Saenz v. State , 842 S.W.2d 286, 292 (Tex. Crim. App. 1992) (finding a stop based solely on law enforcement officer's experience and none of the other Brignoni-Ponce factors to be insufficient for reasonable suspicion).

State v. Cortez , 512 S.W.3d 915, 927 (Tex. App.-Amarillo 2017).

Davison v. State , 405 S.W.3d 682, 691-92 (Tex. Crim. App. 2013) (holding that, ordinarily, we would remand a cause to the lower court to address an issue not yet addressed, but there are exceptions to this practice, and "when the proper resolution of the remaining issue is clear, we will sometimes dispose of the case in the name of judicial economy") (citing Johnston v. State , 145 S.W.3d 215, 224 (Tex. Crim. App. 2004) ); Gilley v. State , 418 S.W.3d 114, 119 (Tex. Crim. App. 2014) ("[W]hen the proper disposition of an outstanding issue is clear," we may dispose of it on discretionary review "in the name of judicial economy.") Presiding Judge Keller's dissent takes the position that the State was not put on notice that it needed to brief whether Cortez was statutorily allowed to drive on the shoulder. Respectfully, we disagree. On direct appeal, the State presented two issues: (1) that the trial court's Findings of Fact and Conclusions of Law are not supported by the record or the law; and (2) that the trial court abused its discretion in finding that the Trooper lacked a reasonable suspicion to conduct a traffic stop. These issues were thoroughly briefed by the parties. In briefing those issues, the State specifically addressed whether "Cortez was authorized by Tex. Trans. Code § 545.058(a) (3) to drive on the improved shoulder, because Cortez was decelerating or slowing to make a right turn from the roadway," and whether "Cortez was authorized pursuant to Tex. Trans. Code § 545.058(a) (5) to drive upon the shoulder as he was being passed by the Trooper." App. Br. (State), State v. Cortez , No. 07-15-00196-CR, at 7-8, 2015 WL 4717801 (Tex. App.-Amarillo 2015). As part of the record before us, we can and have reviewed all of the briefing by the parties in both the court of appeals and in this Court.

The first time that the State petitioned this Court to review the Seventh Court of Appeals's unanimous decision affirming the trial court's order granting Cortez's motion to suppress, this Court vacated the decision of the court of appeals and remanded the case for reconsideration under Heien v. North Carolina , --- U.S. ----, 135 S.Ct. 530, 190 L.Ed.2d 475 (2014) (holding that an officer's mistake of law was reasonable if the statute contained at least some ambiguity and the issue has not been resolved by a State's appellate court).State v. Cortez , 482 S.W.3d 176, 182-83 (Tex. App.-Amarillo 2015), vacated and remanded , 501 S.W.3d 606 (Tex. Crim. App. 2016). On remand, the Seventh Court of Appeals, again unanimous, reissued its original opinion affirming the trial court's suppression order, with modifications, which included a disposition of the Heien issue. State v. Cortez , 512 S.W.3d 915 (Tex. App.-Amarillo 2017).

Cortez was arrested in January of 2014. The trial court granted his motion to suppress in May of 2015. At each procedural step in this case, the trial court's findings and conclusions, which include the three supporting points noted herein, have been recognized. The court of appeals has been on notice throughout the appellate process of all of the pertinent issues, including the issue involving the statutory exceptions, and both times the case has been before the court of appeals it has deferred to the trial court's findings and affirmed the trial court's suppression order.

Cortez , 482 S.W.3d at 183.

Florida v. Jimeno , 500 U.S. 248, 250, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991).

The Fourth Amendment permits a warrantless detention of a person if the detention is justified by reasonable suspicion. Reasonable suspicion to detain a person exists if an officer has specific, articulable facts that, combined with rational inferences from those facts, would lead him to reasonably conclude that the person detained is, has been, or soon will be engaged in criminal activity. Wade v. State , 422 S.W.3d 661, 668 (Tex. Crim. App. 2013). "These facts must show unusual activity, some evidence that connects the detainee to the unusual activity, and some indication that the unusual activity is related to crime.... The test for reasonable suspicion is an objective one that focuses solely on whether an objective basis exists for the detention and disregards the officer's subjective intent." State v. Kerwick , 393 S.W.3d 270, 273-74 (Tex. Crim. App. 2013) ; Martinez v. State , 348 S.W.3d 919, 923 (Tex. Crim. App. 2011).

Crain v. State , 315 S.W.3d 43, 48 (Tex. Crim. App. 2010); State v. Story , 445 S.W.3d 729, 732 (Tex. Crim. App. 2014) (citing State v. Dixon , 206 S.W.3d 587, 590 (Tex. Crim. App. 2006) ).

Arguellez v. State , 409 S.W.3d 657, 662-63 (Tex. Crim. App. 2013).

Story , 445 S.W.3d at 732 (first citing Dixon , 206 S.W.3d at 590 ; and then citing Montgomery v. State , 810 S.W.2d 372, 391-92 (Tex. Crim. App. 1991) ).

Abney v. State , 394 S.W.3d 542, 547 (Tex. Crim. App. 2013) (citing Amador v. State , 275 S.W.3d 872, 878 (Tex. Crim. App. 2009) ); Madden v. State , 242 S.W.3d 504, 517 (Tex. Crim. App. 2007) ("We review the legal question of whether the totality of circumstances is sufficient to support an officer's reasonable suspicion de novo. ") (citing Kothe v. State , 152 S.W.3d 54, 62-63 (Tex. Crim. App. 2004) ); Brodnex v. State , 485 S.W.3d 432, 437 (Tex. Crim. App. 2016) (citing Crain v. State , 315 S.W.3d 43, 48-49 (Tex. Crim. App. 2010) ).

Crain v. State , 315 S.W.3d at 49.

Jaganathan v. State , 479 S.W.3d 244, 247 (Tex. Crim. App. 2015).

Id. (internal citations omitted).

Garcia v. State , 43 S.W.3d 527, 530 (Tex. Crim. App. 2001).

Russell v. State , 717 S.W.2d 7, 9-10 (Tex. Crim. App. 1986), disapproved of on other grounds by Handy v. State , 189 S.W.3d 296, 299 n.2 (Tex. Crim. App. 2006).

Ford v. State , 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

Tex. Transp. Code § 545.058(a).

Tex. Transp. Code § 541.302(6).

Tex. Transp. Code § 541.302(15).

Lothrop v. State , 372 S.W.3d 187, 191 (Tex. Crim. App. 2012).

Presiding Judge Keller's dissent posits that "the vehicle might have touched the fog line," so consequently, "the officer had reason to believe that it may have touched the fog line." If that were true, then there would be reasonable suspicion for any officer to stop any driver driving on a highway with a fog line because all cars driving on such a highway might at some point touch the fog line. In this case, we are evaluating whether this Trooper had reasonable suspicion to stop Cortez's vehicle. As her dissent correctly points out, "[a]ll the officer needed in order to conduct a stop was to be aware of circumstances that establish reasonable suspicion of a traffic violation." Under the totality of the circumstances in this case, we cannot say that the Trooper was aware of circumstances that established that he had a reasonable suspicion that Cortez was committing a traffic violation.

State v. Cortez , 512 S.W.3d at 921.

Tex. Transp. Code § 541.302(15).

Stevenson v. State , 499 S.W.3d 842, 849 (Tex. Crim. App. 2016) (citing State v. Johnson , 219 S.W.3d 386, 388 (Tex. Crim. App. 2007) ).

In re Dotson , 76 S.W.3d 393, 402 (Tex. Crim. App. 2002) (citing Long v. State , 931 S.W.2d 285, 295 (Tex. Crim. App. 1996) ).

Cortez , 512 S.W.3d at 927 (citing State v. Tarvin , 972 S.W.2d 910, 911 (Tex. App.-Waco 1998, pet. ref'd) ).

See State v. Tarvin , 972 S.W.2d 910, 911 (Tex. App.-Waco 1998, pet. ref'd) (holding that briefly crossing the white fog line without evidence of weaving did not justify the stop because there was no evidence that any traffic violation occurred); State v. Dietiker , 345 S.W.3d 426, 429 (Tex. App.-Waco 2011, no pet.) (Dietiker was stopped because "the tires on the passenger side of the vehicle Dietiker was driving crossed over the 'fog line.' "); Stegal v. State , No. 05-16-00098-CR, 2017 WL 1536516, at *1 n.1 (Tex. App.-Dallas 2017, no pet.) (mem. op.) (holding that deputy had reasonable suspicion of a violation of section 545.058 where vehicle's right tires "cross[ed] over the right-hand fog line" (first citing State v. Hanath , No. 01-08-00452-CR, 2010 WL 3833919, at *4 n.4 (Tex. App.-Houston [1st Dist.] Sept. 30, 2010, no pet.) (mem. op., not designated for publication) (stating the fact that two right tires of vehicle were on the shoulder for mere seconds did not affect the application of section 545.058(a) )); then citing Tex. Dept. of Pub. Safety v. Skinner , No. 03-07-00679-CV, 2009 WL 349158, at *2 (Tex. App.-Austin Feb. 12, 2009, no pet.) (mem. op.) (rejecting argument that crossing vehicle's right tires onto right shoulder a single time was not "driving" for purposes of section 545.058(a) ); then citing State v. Wise , No. 04-04-00695-CR, 2005 WL 2952357, at *3 (Tex. App.-San Antonio Oct. 26, 2005, no pet.) (mem. op., not designated for publication) (finding reasonable suspicion where both right tires crossed the solid white line and no indication it was necessary for one of the permissible purposes listed in section 545.058(a) ); and then citing Tyler v. State , 161 S.W.3d 745, 749-50 (Tex. App.-Fort Worth 2005, no pet.) (upholding finding of reasonable suspicion under section 545.058(a) where vehicle straddled solid white line for a few moments and there was no evidence of necessity for one of the exceptions))); McClish v. State , No. 07-06-0188-CR, 2006 WL 2547234, at *1 (Tex.App.-Amarillo 2006, no pet.) (upholding the denial of the motion to suppress where the officer stated that one-third to one-half appellant's van crossed the white fog line onto the shoulder, violating section 545.058, and none of the statutory exceptions for doing so applied); Maldonado v. State , No. 04-12-00228-CR, 2013 WL 2126383, at *5 (Tex. App.-San Antonio 2013, pet. ref'd) ("[The trooper] observed Appellant's vehicle crossing over the fog line onto the improved shoulder at least twice. The dashboard videotape recording confirms this, and the record contains no evidence showing a necessity or one of the seven reasons a driver may safely drive on the shoulder [under section 545.058(a) ]."); State v. Rothrock , No. 03-09-00491-CR, 2010 WL 3064303, at *3 (Tex. App.-Austin Aug. 5, 2010, no pet.) (noting trial court could determine officer lacked reasonable suspicion where video did not establish vehicle crossed line with certainty).
In fact, in State v. Cerny , 28 S.W.3d 796, 801 (Tex. App.-Corpus Christi 2000, no pet.), the trial court granted the defendant's motion to suppress, and the court of appeals affirmed. The officer's video showed the tires of the defendant's car touching, but not going over, the white shoulder line. The court of appeals held that the officer lacked reasonable suspicion of criminal activity. See also United States v. Colin , 314 F.3d 439, 445 (9th Cir. 2002) (noting that "in some cases evidence of weaving might be indicative of driving under the influence," but finding that the officer did not have a reasonable suspicion of driving under the influence where the driver merely touched the right fog line and the center yellow line after two lawful lane changes); United States v. Wendfeldt , 58 F.Supp.3d 1124, 1129-30 (D. Nev. 2014) (holding that the officer did not have reasonable suspicion to stop vehicle when it "merely touched the [fog] line, and never crossed it," and there was no other indication that the defendant violated any traffic laws); State v. Nguyen , No. 13-0045, 2013 WL 5498072, at *3-5 (Iowa App. 2013) (not designated for publication) (holding that, where the video from the police squad car shows the defendant's vehicle "touching the outer fog line, but never crossing it," the police did not have the reasonable suspicion necessary to initiate the traffic stop, noting that "minimal movement in the lane and a momentary touching of the fog line is insufficient" (citing State v. Tague , 676 N.W.2d 197, 205-06 (Iowa 2004) ("Drivers talking on their cell phone, looking at a map, adjusting the radio, adjusting the heater, defroster or air conditioner, or checking on a child restrained in the back seat can lead a driver to momentarily cross an edge line, without giving rise to a reasonable suspicion of intoxication or fatigue.... '[I]f failure to follow a perfect vector down the highway or keeping one's eyes on the road was sufficient [reason] to suspect a person of driving while impaired, a substantial portion of the public would be subject each day to an invasion of [its] privacy.' " (citing United States v. Lyons , 7 F.3d 973, 976 (10th Cir. 1993) ))).

Tex. Transp. Code § 545.058(a).

The dissents note that we should not address the issue of whether Cortez was authorized under the statutory language to drive on the improved shoulder, for the reason that the court of appeals did not address it. While the court of appeals may not have resolved that issue, the issue has by no means gone unaddressed by either the parties or the court of appeals. First, as pointed out earlier, the State did in fact brief that issue before the court of appeals, arguing that the trial court's findings regarding Transportation Code sections 545.058(a)(5) and (a)(3) were not supported by the record. The State's arguments are part of our record. Second, both opinions by the court of appeals include a recitation of several of the trial court's findings and conclusions, and among them are the two conclusions made by the trial court regarding Transportation Code sections 545.058(a)(5) and (a)(3). Cortez , 482 S.W.3d at 180-81 ; Cortez , 512 S.W.3d at 920. Third, in joining the majority appellate court opinion on remand, Justice Pirtle wrote in a concurring opinion as follows:
As discussed by Chief Justice Quinn, there are seven statutorily defined situations where driving on the improved shoulder is not illegal. As noted above, the trial court found that the observable facts did not support a reasonable conclusion that this statutory provision had been violated. Accordingly, irrespective of the officer's interpretation of whether the improved shoulder began inside, on, or over the fog line, the first question the trial court must address is whether the officer was reasonable in his belief that a violation of the law had been committed.... In appraising the trial court's decision, a reviewing court must defer to the trial court's express or implied findings of fact concerning the circumstances surrounding the initial detention. As noted above, in its application-of-law-to-fact conclusions, the trial court found that, considering the facts and circumstances reasonably available to the officer, there was no violation of law (regardless of the interpretation the officer may have given to the applicable Transportation Code provision).
Cortez , 512 S.W.3d at 928-29 (Pirtle, J., concurring) (citations omitted). The State had the chance to, but did not, address Justice Pirtle's concurring opinion in its brief filed with this Court. Respectfully, therefore, we disagree with the dissent that the State was "not put on notice" of this issue, and we do not view our handling of this issue as "especially troubling." We find that both parties and the court of appeals have had ample opportunity to address this issue.

See, e.g., Holland v. State , 802 S.W.2d 696, 701 (Tex. Crim. App. 1991) ("In our discretionary review capacity we review 'decisions' of the court of appeals.").

523 S.W.3d 103, 111 (Tex. Crim. App. 2017).

Id. Indeed, in Salinas , the issue of retroactivity could not have been part of the lower court's decision because the court of appeals found the statutory court costs constitutional. See Salinas v. State , 485 S.W.3d 222, 226-27 (Tex. App-Houston [14th Dist.] 2016).

Notably, in Salinas the Appellant sought rehearing specifically to request the opportunity to brief the retroactivity issue. Later, we refused discretionary review in a case in which the retroactivity issue was one of the grounds for review. Horton v. State , 537 S.W.3d 515; 2017 WL 4399159 at *2 (Tex. Crim. App. 2017) (Newell, J., dissenting) ("That is why I would grant review in this case so that we can fully address the issue of Salinas 's retroactivity in an opinion where the issue has actually been raised.").

State v. Cortez , 512 S.W.3d 915, 919 (Tex. App.-Amarillo 2017).

TEX. TRANSP. CODE § 541.302 (15).

Tex. Gov't. Code § 311.035.

Id.

United States v. Santos , 553 U.S. 507, 514, 128 S.Ct. 2020, 170 L.Ed.2d 912 (2008).

United States v. Granderson , 511 U.S. 39, 54, 114 S.Ct. 1259, 127 L.Ed.2d 611 (1994) ("In these circumstances-where text, structure, and history fail to establish that the Government's position is unambiguously correct-we apply the rule of lenity and resolve the ambiguity in [the defendant's] favor.").

372 S.W.3d 187, 189, 191 (Tex. Crim. App. 2012).

Id. at 191.

Id. ,see also TEX. TRANSP. CODE § 545.058(a) ("An operator may drive on an improved shoulder to the right of the main traveled portion of a roadway if that operation is necessary and may be done safely, but only: (1) to stop, stand, or park; (2) to accelerate before entering the main traveled lane of traffic; (3) to decelerate before making a right turn; (4) to pass another vehicle that is slowing or stopped on the main traveled portion of the highway, disabled, or preparing to make a left turn; (5) to allow another vehicle traveling faster to pass; (6) as permitted or required by an official traffic-control device; or (7) to avoid a collision.").

Jaganathan v. State , 479 S.W.3d 244, 247 (Tex. Crim. App. 2015).

Id.

Id. ("The question in this case is not whether appellant was guilty of the traffic offense but whether the trooper had a reasonable suspicion that she was.").

Baldwin v. State , 278 S.W.3d 367, 371 (Tex. Crim. App. 2009) (" 'Probable cause' is a greater level of suspicion than 'reasonable suspicion' and requires information that is more substantial in quality or content and a greater reliability with respect to the source of information.... Probable cause is a relatively high level of suspicion, though it falls far short of a preponderance of the evidence standard.")

Id.

Tex. Transp. Code § 541.302(15).

See Tex. Transp. Code § 545.058(2), (7).

Davison v. State , 405 S.W.3d 682, 691-92 (Tex. Crim. App. 2013).

Moreover, the issue the Court addresses is not a "remaining issue" to be resolved after resolving whether touching the fog line constituted driving on the improved shoulder. Perhaps it would be if the Court had resolved the fog-line issue in favor of the State. Instead, the Court has articulated an alternate ground for upholding the judgment of the court of appeals that the court of appeals never addressed.

See Ex parte Doster , 303 S.W.3d 720, 721 & n.2 (Tex. Crim. App. 2010) (recognizing threshold issue, granting review on our own motion, and ordering briefing).

I agree with Presiding Judge Keller's conclusion that "the fog line must be part of the shoulder." Dissenting Opinion at 213. I disagree with her, however, to the extent that she apparently believes that the court of appeals addressed the question of whether driving momentarily on the fog line would constitute an offense. See Dissenting Opinion at 212 ("We can also ask whether touching the fog line constitutes 'driving' on it [because this issue was among those that] were addressed by the court of appeals."). Thus, when the Court today holds that, even if the fog line itself constitutes the shoulder, a mere "momentary touch" of the fog line would not constitute an offense, it is resolving an issue that the court of appeals had also resolved. Majority Opinion at 206. To the extent that the court of appeals did so, however, it only did so in the context of its treatment of the issue we ordered it to address on remand, namely, whether the trooper made a reasonable mistake of law in believing that Appellee violated the traffic code, under Heien v. North Carolina , 574 U.S. ----, 135 S.Ct. 530, 190 L.Ed.2d 475 (2014). See State v. Cortez , 512 S.W.3d 915, 926 (Tex. App.-Amarillo 2017) (trooper did not claim to be aware of any law holding that a "momentary touch of some fraction of a 'fog line' or boundary hardly connotes driving upon either the boundary or the area on the other side of the boundary"). But the State did not raise the Heien issue in its petition for discretionary review, nor did it otherwise argue the "momentary touch" issue, and we did not grant review of the either issue on our own motion.

Acting in this same capacity as a super-appellate court, we could have issued the opinion the Court hands down today at least a year-and-a-half ago, instead of remanding the cause at that time for the court of appeals to address a separate issue the Court does not even mention in its opinion today. See State v. Cortez , 501 S.W.3d 606, 610 (Tex. Crim. App. 2016) (remanding this cause to the court of appeals to address the State's argument predicated on Heien ).

Surely police officers may not be permitted to make their own probable cause by essentially provoking citizens into committing suspicious conduct. Cf. Brown v. State , 481 S.W.2d 106, 111 (Tex. Crim. App. 1972) (quoting Wong Sun v. United States , 371 U.S. 471, 484, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), for the proposition that "a vague suspicion cannot be transformed into probable cause to arrest by reason of ambiguous conduct which the arresting officers themselves provoked") (internal quotation marks omitted); Faulk v. State , 574 S.W.2d 764, 766 (Tex. Crim. App. 1978) (same); Parker v. State , 206 S.W.3d 593, 598 n.21 (Tex. Crim. App. 2006) (noting that exigent circumstances will not satisfy Fourth Amendment concerns "if the government deliberately creates them") (quoting United States v. Coles , 437 F.3d 361, 366 (3d Cir. 2006) ).

We have sometimes resolved petitions for discretionary review on a basis that was broader than the grounds presented in the petition itself. See Blanco v. State , 962 S.W.2d 46, 47 (Tex. Crim. App. 1998). But I am unaware of a case in which we simply ignored the issue raised in the petition for discretionary review and resolved the case on different issues altogether.