

# In the Court of Criminal Appeals of Texas

No. PD-0037-22

BERNARD DANIEL,

*Appellant*

v.

THE STATE OF TEXAS

On State's Petition for Discretionary Review
From the Third Court of Appeals
Bell County

YEARY, J., filed a concurring opinion.

I agree with the Court that the officer's dilemma in this case, created by the conflict between the controlling precedent in the Third Court of Appeals and this Court's non-precedential decision in *Leming*

*v. State*, 493 S.W.3d 552 (Tex. Crim. App. 2016), should inure to the benefit of the State and the officer's decision to detain. In my view, however, the Court should uphold the officer's detention decision, not because the officer made a reasonable mistake, but because, based on a correct understanding of our statutory law, the officer did nothing wrong—*at all*. Neither he nor the State should be unfairly punished for their allegiance and adherence to the very clear laws that were passed by our Legislature to guide the judgment of law enforcement in cases like this one. The way I see it, the officer's judgment was good, and he might have saved lives.

The State was correct to argue that the officer's dash-cam video "showed 'a very clear failure to maintain a single lane during a left turn,' and that this was 'a clear violation of the law.'" Majority Opinion at 3. In light of that, the officer's decision to detain and investigate was entirely reasonable. So, I ultimately agree with the Court that the trial court's judgment in this case should be affirmed, and the court of appeals' judgment should be reversed, albeit for a different reason than the Court's.

But this case illustrates how this Court's recent opinion in *State v. Hardin* was both wrong and highly problematic. *See* 664 S.W.3d 867 (Tex. Crim. App. 2022). It has mandated adherence to a *clearly erroneous* interpretation of our statutory law. Contrary to the opinion of the Court in *Hardin*, the offense for which the officer initiated a traffic stop in this case *does not* require evidence that the movement by the vehicle could not be made safely.

Established in Section 542.301(a) of the Texas Transportation

Code, the language of the offense at issue in this case, and also at issue previously in *Hardin*, provides that:

> (a) A person commits an offense if the person *performs an act prohibited* **or** *fails to perform an act required* by this subtitle.

TEX. TRANSP. CODE § 542.301(a) (all emphasis added). This formulation, to me, clearly establishes two distinct potential offenses: (1) commission of an act prohibited by "this subtitle," **and** (2) failure to comply with a requirement of "this subtitle." Then, separately, Section 545.060(a) of our Transportation Code, which *is a part of the same "subtitle"* as section 542.301(a), establishes both a requirement and a prohibition, either of which—according to my view—might constitute discrete offenses under Section 543.301(a).[1] Specifically, Section 545.060(a) provides:

> (a) An operator on a roadway divided into two or more clearly marked lanes for traffic:
>
> (1) shall drive as nearly as practical entirely within a single lane; and
>
> (2) may not move from the lane unless that movement can be made safely.

TEX. TRANSP. CODE § 545.060(a).

Thus, to me and, I hope, to other readers of plain English as well (though clearly not enough to win the day in *Hardin*, or in this case), Section 545.060(a) identifies two discrete ways in which a person might commit an offense pursuant to the provisions of Section 543.301(a): (1) by failing to drive as nearly as practical entirely within a single lane, or,

---

[1] Sections 542.301 and 545.060 are both located within Title 7, Subtitle C, of the Texas Transportation Code, which is called "Rules of the Road[.]"

separately and distinctly, (2) by moving from a lane when that movement cannot be made safely. *See Hardin*, 664 S.W.3d at 885–89 (Tex. Crim. App. 2022) (Yeary, J., dissenting). This means that if Appellant drove his vehicle on the roadway, and he failed to "drive as nearly as practical entirely within a single lane[,]" then Appellant failed "to perform an act required" by a statute found within Title 7, Subtitle C, of the Texas Transportation Code. The safety of the action is not a consideration. And it also means that if the officer who detained him developed a reasonable suspicion that Appellant violated the law in that way, the officer was justified in detaining Appellant to investigate whether he committed an offense.

I am sure that the members of this Court who joined *Hardin* agree with it and are convinced that it is correct. But I could not join that opinion because I am convinced that it represents the application of some kind of judicial philosophy other than an originalist textualism, which I believe to be the best way for courts to read legislative enactments in our constitutional form of government. It still seems to me that the Court, in *Hardin*, by failing to simply accept the plain and intelligible language of the statutes at issue there, has re-written our law rather than simply accepting it as it was written. *See id.* at 885 (Yeary, J., dissenting). Consequently, in my view, *Hardin* should just be overruled as quickly as possible. *See id.* at 885–89 (Yeary, J., dissenting).

Some may be disturbed that an officer might be justified in detaining a person on the roadway after having merely developed a reasonable suspicion that the person has failed to "drive as nearly as

practical entirely within a single lane" in an automobile.[2] It is true that it is sometimes difficult to stay even "as nearly as practical" entirely within the lanes on a roadway. But driving an automobile in this State is a privilege reserved for people who take seriously the danger that automobiles may pose to themselves and to the rest of our population. *Burg v. State*, 592 S.W.3d 444, 449 (Tex. Crim. App. 2020) ("Appellant does not have any right to be free from a license suspension given that the act of driving is a privilege not a right.").

According to the Texas Department of Transportation, there were 4,481 deaths due to accident on Texas roadways in 2022.[3] Of those, 1,163 deaths were caused in crashes in which a driver was under the influence of alcohol.[4] One person was killed on Texas roadways every one hour

---

[2] *Cf. State v. Cortez*, 543 S.W.3d 198, 206 (Tex. Crim. App. 2018) ("As the court of appeals pointed out, '[d]riving is an exercise in controlled weaving. It is difficult enough to keep a straight path on the many dips, rises, and other undulations built into our roadways.' Even a driver who is sober, alert, and careful may occasionally drift within their lane only because the roadway surface is not perfectly smooth. Moreover, drivers are not able to see if their tires are touching the fog line. They are likely to veer over at some point and touch the fog line alongside the roadway without being aware they have done so. Some lane boundaries have raised reflective pavement markers or road grooves in the asphalt, rather than painted lines, to alert drivers when they are veering too close to another lane or are about to cross over into the shoulder. Sometimes these road grooves are on the fog line, sometimes they are alongside the outer edge of the painted fog line. Thus, we choose to evaluate the totality of the circumstances in this case to determine the reasonableness of the Trooper's stop.").

[3] TEX. DEP'T OF TRANSP., TEXAS MOTOR VEHICLE TRAFFIC CRASH FACTS (2022), https://ftp.txdot.gov/pub/txdot-info/trf/crash_statistics/2022/01.pdf.

[4] *Id.*

and 57 minutes.[5] Also, one person was injured on Texas roadways every one minute and nine seconds.[6] And law enforcement officers are charged with the difficult duty to enforce our traffic laws and to find and detain individuals who are impaired and remove them from the roadway.

Officers who correctly read, understand, and enforce laws like the one at issue in this case—laws that are clear and unambiguous, but which are nevertheless misconstrued by the courts—should never be penalized for enforcing the law as it is written by our Legislature. But this Court's opinion in *Hardin* will, eventually, cause that to happen, along with other anomalous and possibly even tragic results.[7]

Sometimes even judges (myself included) make mistakes. But the laws at issue in *Hardin*, and in this case, do not say what this Court said they do. The Court was wrong to construe those statutes the way it has.

---

[5] *Id.*

[6] *Id.*

[7] In my dissent in *Hardin*, I pointed out some anomalies that might present themselves under the Court's misconstruction of the statutes at issue there. Those same statutes are at issue here. But the facts of this case bring to mind still other, far more tragic possible consequences. For example, in this very case, the Court admits that Appellant had a blood alcohol content of .174. Majority Opinion at 2. The Court also concedes that, "[b]ased on his criminal history, and the events of that morning, Appellant was indicted for *felony* driving while intoxicated." *Id.* (emphasis added). And Appellant was eventually convicted for his conduct in this case, presumably upon proof satisfying the beyond-a-reasonable-doubt standard. *Id.* at 3. If, instead, the officer in this case would have followed this Court's misconstruction of the law, as described in *Hardin*, he might have waited to detain Appellant until such time as Appellant's car came near other vehicles on the road. And during that extra time before detention, Appellant might have been involved in a single car accident and been injured or killed. The Court should take the opportunity presented by this case, today, and without delay, to simply overrule its mistaken, and clearly erroneous, opinion in *Hardin*.

And the Court was also wrong to say that reading the statutes at issue here the right way—the way I have suggested—would render the statutes unconstitutional. *Hardin*, 664 S.W.3d at 875. It most certainly would not.

The officer in this case read and understood those laws correctly. He should be honored for having followed their dictates *as written*. He should not be made to beg—via a prosecutor's invocation of the exception established by the United States Supreme Court's opinion in *Heien v. North Carolina*, 574 U.S. 54 (2014)—to be excused from the extra-textual mandates erroneously imposed by this Court alone. *See, e.g.*, State's Brief at 11 (citing *Heien*, 574 U.S. at 61). I respectfully concur only with the result reached by the Court's opinion.

**FILED:**  February 14, 2024
**PUBLISH**