

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| DANNY WILLIE FLORES, | § | No. 08-21-00129-CR |
| Appellant, | § | Appeal from the |
| v. | § | 112th Judicial District Court |
| THE STATE OF TEXAS, | § | of Pecos County, Texas |
| Appellee. | § | (TC# P-4041-112-CR) |

## OPINION

Following the trial court's denial of his motion to suppress evidence seized in a traffic stop, Appellant, Danny Willie Flores, pleaded guilty to possession with intent to deliver a controlled substance—methamphetamine in an amount greater than four grams but less than two hundred grams. Appellant challenges the denial of his motion to suppress, arguing that the trial court erred by denying the motion because the officer who stopped Appellant: (1) lacked reasonable suspicion to conduct the initial traffic stop; (2) prolonged the detention after conducting the stop; and (3) failed to read Appellant the *Miranda* warnings before subjecting him to a custodial interrogation. We affirm Appellant's conviction.

## I. BACKGROUND

Deputy Andres Gonzales of the Pecos County Sherriff's Office testified at a hearing on

Appellant's motion to suppress. Gonzalez testified that on December 31, 2018, he was driving his patrol vehicle near Iraan, Texas. He then observed a silver vehicle "entire[ly]" driving on the improved shoulder of the highway such that the vehicle was traveling "nearly off the pavement" as it was turning with a right-curved lane exiting off the highway. Gonzales recalled that there was "no apparent reason" for the vehicle to be traveling on the improved shoulder. Because driving on an improved shoulder without a statutory justification is a traffic offense and because he was concerned why the driver was driving so far off the improved shoulder on New Year's Eve, Gonzales initiated a traffic stop of the vehicle.

Upon initiating the traffic stop, Gonzales observed that the driver of the vehicle, later identified as Appellant, was "making some movements leaning towards the front passenger side of the vehicle." Based on his training and experience, Gonzales believed these movements possibly related to concealing a weapon or narcotics. [1] When Gonzales first spoke to Appellant at the stop, he requested Appellant's driver's license. Appellant responded that he did not have one. When Gonzales asked why Appellant was driving on the shoulder, Appellant failed to give an explanation.[2] While he was speaking to Appellant, Gonzales observed a small plastic bag and a torch lighter in the vehicle's center console area, which Gonzales testified are commonly used to smoke methamphetamine.

Gonzales asked Appellant to exit the vehicle, and after Gonzales saw that Appellant had a pocketknife on his person, he conducted a pat-down of Appellant to check for weapons. Due to the noise from the wind and passing vehicles on the highway, Gonzales asked Appellant to sit in

---

[1] Gonzales testified that he had been a licensed peace officer in Texas since 2001, was a certified canine handler, had taken "numerous" continuing education courses in criminal interdiction, and had approximately two hundred hours of experience with narcotics interdiction.

[2] At the hearing, Appellant testified that he saw headlights from "a big vehicle" behind him and he drove onto the improved shoulder "[t]o get out of the way" of the vehicle.

his patrol vehicle while he obtained Appellant's information and wrote out a warning for the traffic violation. Even so, Gonzales testified that he had not arrested Appellant at that time. Gonzales spent several minutes simultaneously asking Appellant questions, typing out the warning for the traffic violation, and running Appellant's insurance information. During this dialog, Appellant stated that his driver's license was invalid due to his prior imprisonment for possession of a controlled substance.

About seven-and-a-half minutes after the initial stop, Gonzales asked Appellant if he had any contraband or narcotics in the vehicle, and Appellant admitted that he had methamphetamine in his vehicle. Gonzales then handcuffed Appellant and read him the *Miranda* warnings. Thereafter, Appellant admitted that the methamphetamine was in a backpack in his vehicle. Gonzales's bodycam video shows that he subsequently searched Appellant's vehicle and located a backpack on the front passenger-side floorboard. Inside the backpack, Gonzales found a scale and a plastic baggie containing a quantity of methamphetamine.

Following three separate hearings on the motion to suppress, the trial court denied the motion by written order that did not include findings of fact or conclusions of law. Appellant first tried to appeal the court's interlocutory order, but because he had not appealed from a final judgment, this Court dismissed the appeal for lack of jurisdiction. *Flores v. State*, No. 08-21-00056-CR, 2021 WL 1940624, at *2 (Tex.App.--El Paso May 14, 2021, no pet.) (mem. op., not designated for publication). Appellant subsequently pleaded guilty to the charged offense and true to the State's enhancement allegation, and the court imposed punishment of ten years' imprisonment.

In three issues, Appellant now appeals his conviction by challenging the trial court's order denying his motion to suppress, arguing that: (1) Gonzales lacked reasonable suspicion to conduct

3

the initial traffic stop; (2) Gonzales lacked reasonable suspicion to prolong the detention after conducting the stop; and (3) Gonzales failed to read Appellant the *Miranda* warnings before subjecting him to custodial interrogation.

## II. STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *State v. Story*, 445 S.W.3d 729, 732 (Tex.Crim.App. 2014). Appellate courts review a trial court's ruling on a motion to suppress under a bifurcated standard. *State v. Arellano*, 600 S.W.3d 53, 57 (Tex.Crim.App. 2020). We afford a trial court's findings of historical fact almost total deference if they are reasonably supported by the record. *See Sims v. State*, 569 S.W.3d 634, 640 (Tex.Crim.App. 2019). The same deferential standard of review is applied to a trial court's determination of fact that is based upon a video recording admitted at the suppression hearing. *See State v. Duran*, 396 S.W.3d 563, 570 (Tex.Crim.App. 2013). "We review de novo a trial court's determination of legal questions and its application of the law to facts that do not turn upon a determination of witness credibility and demeanor." *Arrellano*, 600 S.W.3d at 57.

When the trial court does not enter findings of fact and conclusions of law, we infer the necessary fact findings that support the trial court's ruling if the record evidence (viewed in the light most favorable to the ruling) supports those implied factual findings. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex.Crim.App. 2008). As such, we afford "almost total deference" to a trial court's determination of the historical facts, especially when its implicit fact findings are based on an evaluation of credibility and demeanor, no matter if the trial court granted or denied the motion. *Id*. Thus, the party that prevailed in the trial court "is afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence." *Id*.

4

## III.  TRAFFIC STOP

### A.  Applicable Law

A traffic stop must be supported by reasonable suspicion.  *Ford v. State*, 158 S.W.3d 488, 492-93 (Tex.Crim.App. 2005).  "Reasonable suspicion to detain a person exists when a police officer has 'specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that the person detained is, has been, or soon will be engaged in criminal activity.'"  *Ramirez-Tamayo v. State*, 537 S.W.3d 29, 36 (Tex.Crim.App. 2017), *quoting Furr v. State*, 499 S.W.3d 872, 878 (Tex.Crim.App. 2016).  A reasonable suspicion is more than a mere hunch; the standard requires considerably less proof of wrongdoing than a preponderance of the evidence, and obviously less than is necessary for probable cause. *Garcia v. State*, No 08-19-00176-CR, 2021 WL 235658, at *4 (Tex.App.--El Paso Jan. 25, 2021, no pet.) (not designated for publication), *citing Kansas v. Glover*, 140 S.Ct. 1183, 1187 (2020) (noting that reasonable suspicion falls considerably short of 51% accuracy).

When determining whether reasonable suspicion supported a traffic stop, we do not consider the officer's subjective intent in stopping a suspect; rather, we look "solely to whether an objective basis for the stop exists under the totality of the circumstances."  *Al-Hanna v. State*, No. 08-17-00037-CR, 2019 WL 156779, at *3 (Tex.App.--El Paso Jan. 10, 2019, no pet.) (not designated for publication), *citing Ford*, 158 S.W.3d at 492-93.   In a motion to suppress evidence under the Fourth Amendment, the accused carries the initial burden to produce evidence that rebuts the presumption of proper police conduct by showing that the search or seizure occurred without a warrant; once this occurs, the burden shifts to the State to prove the reasonableness of the search or seizure.  *Id.*, *citing Ford*, 158 S.W.3d at 492.   Because Appellant was seized and his vehicle was searched without warrants, the State bore the burden to establish the reasonableness of

Appellant's seizure and the search of his vehicle.   *See id.*

In this case, Gonzales testified that he stopped Appellant for driving on the improved shoulder of the highway.   Under section 545.058(a) of the Texas Transportation Code:

> (a) An operator may drive on an improved shoulder to the right of the main traveled portion of a roadway if that operation is necessary and may be done safely, but only:
>
>> (1) to stop, stand, or park;
>>
>> (2) to accelerate before entering the main traveled lane of traffic;
>>
>> (3) to decelerate before making a right turn;
>>
>> (4) to pass another vehicle that is slowing or stopped on the main traveled portion of the highway, disabled, or preparing to make a left turn;
>>
>> (5) to allow another vehicle traveling faster to pass;
>>
>> (6) as permitted or required by an official traffic-control device; or
>>
>> (7) to avoid a collision.

TEX. TRANSP. CODE ANN. § 545.058(a); *see State v. Cortez*, 543 S.W.3d 198, 204 (Tex.Crim.App. 2018).   An "improved shoulder" is defined as "a paved shoulder."   TEX. TRANSP. CODE ANN. § 541.302(6).   And "shoulder" is defined as the portion of a highway that is:

> (A) adjacent to the roadway;
>
> (B) designed or ordinarily used for parking;
>
> (C) distinguished from the roadway by different design, construction, or marking; and
>
> (D) not intended for normal vehicular travel.

*Id.* § 541.302(15).   Thus, an officer has reasonable suspicion to stop a vehicle driving on an improved shoulder "if it appears that driving on the improved shoulder was not necessary to achieving one of the seven approved purposes *or* it appears that driving on the improved shoulder

could not be done safely." *Cortez*, 543 S.W.3d at 205.

## B. Analysis

Gonzales testified that he observed Appellant's vehicle driving "entirely" on the improved shoulder to the point that the vehicle "nearly left the pavement." Gonzales's testimony is supported by the dashcam footage and still photographs of the traffic stop, both of which show Appellant's vehicle traveling almost entirely on the shoulder with its left tires on top of the shoulder line. In particular, the video from the patrol vehicle's dashcam shows Appellant's vehicle traveling normally down the highway until time stamp 0:15, when it makes a right turn onto a merging lane.[3] At 0:18, the vehicle's right tires began to cross the white shoulder line, and by 0:22 nearly the entire vehicle was traveling on the improved shoulder, with the vehicle's left tires driving directly on top of the shoulder line. The vehicle then began to re-enter the lane of travel before Gonzales activated his emergency lights and initiated the traffic stop. In total, Appellant's vehicle had at least partially crossed over the white shoulder line for approximately thirteen seconds before returning to the proper lane of travel. When Appellant asked Gonzales why he had been stopped, Gonzales replied that he had stopped Appellant for driving on the improved shoulder, and Appellant laughed and said that he had not seen the shoulder line.

Given our deference to the trial court's determination of historical facts, the record supports an implied finding that Appellant was traveling on the improved shoulder of the highway. *Cf. Cortez*, 543 S.W.3d at 205 (holding that an officer lacked reasonable suspicion to conduct a traffic stop where the trial court found that it was unclear from the officer's dashcam video if the defendant's tires were touching the shoulder line).

---

[3] References to time stamps within video exhibits will refer to the relevant time stamp displayed on the media player software.

Having determined that Appellant was traveling on the improved shoulder, we next determine whether he was justified under section 545.058(a) in doing so. *See id.* at 207-08. Gonzales testified that although there are several circumstances that allow for a motorist to travel on an improved shoulder, there did not appear to be a justification for Appellant to do so here. The dashcam footage also supports Gonzales's testimony on this matter. None of the justifications for traveling on the improved shoulder are apparent from either Gonzales's testimony or the video, as neither showed that Appellant was stopped on the shoulder, accelerating or decelerating before turning, passing another vehicle, allowing another vehicle (such as Gonzales's) to pass, driving in compliance with a traffic-control device, or trying to avoid a collision. Moreover, when Gonzales told him that he had stopped him for driving on the improved shoulder, Appellant had no explanation for doing so other than that he had not seen the line.

On appeal, Appellant argues that Gonzales lacked reasonable suspicion because he was attempting to allow Gonzales to pass—a statutory justification for driving on the improved shoulder. *See* TEX.TRANSP.CODE ANN. § 545.058(a)(5). Appellant argues that Gonzales admitted that he had moved closer to Appellant's vehicle prior to initiating the traffic stop, thus adding credence to the notion that Appellant was moving out of the way to allow Gonzales to pass him. Appellant also points to his own suppression hearing testimony that he had moved onto the improved shoulder to allow Gonzales to pass. Although Gonzales testified that he had moved closer to Appellant's vehicle prior to initiating the stop, the video reflects that any closure between the two vehicles was minimal. The evidence in the record was sufficiently conflicting that the trial court could have discounted that Appellant moved on to the shoulder to allow the police cruiser to pass.

In sum, given that the trial court denied Appellant's motion to suppress and did not enter

findings of fact or conclusions of law, we infer any necessary fact findings supported by the evidence necessary to uphold the trial court's order. *See Garcia-Cantu*, 253 S.W.3d at 241. Affording proper deference to the trial court's implied factual findings, which are supported by Gonzales's testimony and the dashcam video, we infer that the trial court rejected Appellant's explanation and accepted Gonzales's testimony that there was no justification for Appellant to be traveling on the improved shoulder.

Thus, the trial court did not abuse its discretion by denying Appellant's motion to suppress. *See Ford v. State*, No. 12-18-00217-CR, 2019 WL 1760351, at *2-3 (Tex.App.--Tyler Apr. 10, 2019, no pet.) (mem. op., not designated for publication) (holding that an officer was justified in conducting a traffic stop under section 545.058(a) because none of the statutory justifications for driving on an improved shoulder were apparent from the record); *compare with Cortez*, 543 S.W.3d at 208 (holding that an officer was not justified in stopping the defendant under section 545.058(a) where the trial court found it unclear from the dashcam video whether the defendant's tires had touched the shoulder line, and where the trial court found that the defendant was justified in driving on the improved shoulder because he was allowing the officer to pass and slowing down before making a right turn).

Appellant's Issue One is overruled.

## IV. PROLONGED DETENTION

### A. Applicable Law

Appellant's second issue challenges whether Gonzales impermissibly extended the detention beyond its original justification. Like a traffic stop, any ensuing detention must also be supported by reasonable suspicion, which is determined by the same standard we note above. *See Ramirez-Tamayo*, 537 S.W.3d at 36. The Supreme Court has recognized that "[a] seizure for a

9

traffic violation justifies a police investigation of that violation." *Garcia*, 2021 WL 235658, at *4, *quoting Rodriguez v. United States*, 575 U.S. 348, 354 (2015). Beyond determining whether to issue a traffic citation, an officer's mission during a traffic stop also includes "ordinary inquiries incident to [the traffic] stop." *Rodriguez*, 575 U.S. at 355, *quoting Illinois v. Caballes*, 543 U.S. 405, 408 (2005). Those inquiries typically involve determining whether there are outstanding warrants against the driver, running a records check on the driver's license, and inspecting the vehicle's registration and proof of insurance. *See id.* (noting that these checks serve the same purpose as enforcement of the traffic code by ensuring vehicles are operated safely), *citing Delaware v. Prouse*, 440 U.S. 648, 658-60 (1979). And because traffic stops are "especially fraught with danger to police officers," law enforcement may also order a driver to exit a vehicle lawfully detained for a traffic violation without violating the Fourth Amendment. *Garcia*, 2021 WL 235658, at *4, *quoting Arizona v. Johnson*, 555 U.S. 323, 330-31 (2009). The officer may also pat down the driver if the officer has reasonable suspicion that the driver might be armed and dangerous. *Id.*, *citing Johnson*, 555 U.S. at 331-32.

The seizure of the driver "ordinarily continues, and remains reasonable, for the duration of the stop." *Id.*, *quoting Johnson*, 555 U.S. at 333 (a traffic stop normally ends when law enforcement has no further need to control the scene and informs the driver he is free to leave). A traffic stop made to investigate a traffic violation must be reasonably related to that purpose and may not be prolonged beyond the time to complete the tasks associated with the traffic stop. *Lerma v. State*, 543 S.W.3d 184, 190 (Tex.Crim.App. 2018). Although an officer may ask the driver and passengers about matters unrelated to the purpose of a traffic stop, that questioning cannot measurably extend the duration of the stop. *Id.*, *citing Johnson*, 555 U.S. at 333. An officer's inquiries into "matters unrelated to the justification for the traffic stop . . . do not convert the

10

encounter into something other than a lawful seizure, so long as they do not measurably extend the duration of the stop." *Garcia*, 2021 WL 235658 at *4. An officer may not prolong the stop, however, absent reasonable suspicion. *Id.*, *citing Rodriguez*, 575 U.S. at 356 (holding that reasonable suspicion is needed to continue an otherwise completed traffic stop to conduct a canine sniff).

When determining the lawfulness of a traffic stop and subsequent search and seizure under the Fourth Amendment, we engage in two inquiries: (1) whether the officer's action was justified at its inception; and (2) whether the search and seizure were reasonably related in scope to the circumstances that justified the stop in the first place. *Lerma*, 543 S.W.3d at 190, *citing Terry v. Ohio*, 392 U.S. 1, 19-20 (1968). Because we hold that Gonzales was justified in initiating a traffic stop of Appellant for the reasons set forth above, the first prong has been satisfied and we need only discuss the second prong.

## B. Analysis

Gonzales testified that right after he activated his vehicle's emergency lights, he observed Appellant making movements toward the passenger side of the vehicle's interior, which according to Gonzales's training and experience, suggested to him that Appellant was possibly attempting to conceal a weapon or narcotics. The bodycam video shows that Gonzales contacted Appellant in his vehicle at approximately time stamp 0:30. After Gonzales asked Appellant a few questions about where he was coming from and going to, and why his driver's license was suspended, Gonzales informed Appellant that he would issue a warning for driving on the improved shoulder. Gonzales conducted a pat-down of Appellant's person after seeing that he had a pocketknife in his possession. He then asked Appellant to sit in the patrol vehicle while Gonzales wrote up a warning for driving on the improved shoulder. From time stamps 2:19 to 7:06, Appellant sat in

11

the front passenger seat of the patrol vehicle and Gonzales began checking Appellant's personal information on his computer while he continued to speak to Appellant about his phone number, address, place of work, health issues, the ownership of his vehicle, and whether the vehicle was insured. During this conversation, Appellant stated that his license was invalid because he had served time in prison for possession of a controlled substance.

At time stamp 7:22, Gonzales asked Appellant if he had a large amount of currency, hidden compartments, or weapons in the vehicle, and Appellant replied that there might be some ammunition in the vehicle. At 8:10, Gonzales asked Appellant if there was methamphetamine in the vehicle, and Appellant admitted that there was about one-half ounce of methamphetamine inside the vehicle. At 8:38, after Gonzales handcuffed Appellant and read him the *Miranda* warnings, Appellant admitted that the methamphetamine was in his backpack in the vehicle.

In sum, about seven-and-a-half minutes passed between the time Gonzales started the traffic stop and Appellant admitted that methamphetamine was present in his vehicle. At that point Gonzales had probable cause to arrest Appellant for possession of a controlled substance. Gonzales testified that Appellant began making suspicious movements in the vehicle after Gonzales began the traffic stop. Based on his training and experience, which included approximately two hundred hours of narcotics interdiction, Gonzales believed that Appellant may have been attempting to conceal contraband; this constitutes reasonable suspicion of criminal activity beyond that related to the initial traffic stop. *See, e.g.*, *Kelly v. State*, 331 S.W.3d 541, 549-50 (Tex.App.--Houston [14th Dist.] 2011, pet. ref'd) (a person's nervous and furtive movements may constitute a factor in determining reasonable suspicion). Although Appellant argues that Gonzales's testimony on this issue was not supported by the videos, we defer to the trial court's implied factual determination of this matter in favor of its ruling. *See Garcia-Cantu*,

12

253 S.W.3d at 241.

Given the circumstances, we cannot say that a period of seven-and-a-half minutes between the initial traffic stop and Appellant's admission to possessing methamphetamine constituted an unreasonably prolonged investigative detention, especially considering Gonzales's articulation of facts unrelated to the traffic stop that constituted reasonable suspicion of some other criminal activity besides the traffic violation. *See Lerma*, 543 S.W.3d at 190 (an officer may ask drivers and passengers about matters unrelated to the purpose of a traffic stop if the officer does not measurably extend the duration of the stop). For these reasons, we conclude that the trial court did not abuse its discretion by denying Appellant's motion to suppress on this basis. *See id.* at 195 (holding that an officer did not unreasonably delay an investigative detention when a "mere nine minutes" passed between the initial traffic stop and the defendant's flight from the officer, and where the record showed that the officer acted diligently in his investigation of the traffic stop and in questioning the defendant); *Kelly*, 331 S.W.3d at 550 (holding that an officer did not unreasonably prolong a traffic stop by asking questions about possession of narcotics, which were reasonably related to the traffic-stop investigation, because the defendant was nervous, made furtive movements, and the officer acted quickly after learning that the defendant had prior criminal history of narcotics possession).

Appellant's Issue Two is overruled.

## V. *MIRANDA* WARNINGS

### A. Applicable Law

Finally, we determine whether Appellant's statements during the encounter resulted from a custodial interrogation, which required the trial court to suppress all of Appellant's statements made before the reading of the *Miranda* warnings.

13

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. In *Miranda v. Arizona*, the Supreme Court held that an individual's Fifth Amendment right to be free from self-incrimination extends to statements elicited in a custodial interrogation. 384 U.S. 436, 461 (1966). Thus, *Miranda* obligates the police, before a custodial interrogation, to apprise the suspect of the right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. *Id.* at 444. If the warnings are not given promptly before a custodial interrogation, any statements given to law enforcement in response to such interrogation are inadmissible at trial. *Id.* at 444, 479; *see also Wilkerson v. State*, 173 S.W.3d 521, 526 (Tex.Crim.App. 2005) (recognizing that under the holding in *Miranda*, "the State may not use any statements stemming from 'custodial interrogation of the defendant'" absent the safeguards required by *Miranda*).[4]

The defendant has the initial burden to establish that his statement resulted from custodial interrogation. *Wexler v. State*, 625 S.W.3d 162, 168 (Tex.Crim.App. 2021), *citing Herrera v. State*, 241 S.W.3d 520, 526 (Tex.Crim.App. 2007). "A custody determination requires two inquiries: the circumstances surrounding the interrogation and whether a reasonable person in those circumstances would have felt that she was not free to leave." *Id*. at 167, *citing Thompson v. Keohane*, 516 U.S. 99, 112 (1995). We apply an objective test to determine whether the restraint on the defendant's freedom of movement was of a degree consistent with a formal arrest. *Id*. In *Dowthitt v. State*, the Texas Court of Criminal Appeals identified four general situations that may constitute custody: (1) the suspect is physically deprived of freedom of action in any

---

[4] Although Appellant argued in his written motion to suppress that his statements were also obtained in violation of TEX.CODE CRIM.PROC.ANN. art. 38.22 (the Texas statutory codification of the *Miranda* warnings), he does not raise a separate argument regarding article 38.22 on appeal. Thus, we limit our discussion solely to whether Appellant's statements were obtained in violation of his federal right against self-incrimination under *Miranda*.

14

significant way; (2) a law enforcement officer tells the suspect that they cannot leave; (3) law enforcement officers create a situation that would lead a reasonable person to believe their freedom of movement has been significantly restricted; or (4) there is probable cause to arrest, and law enforcement officers do not tell the suspect that they are free to leave. 931 S.W.2d 244, 255 (Tex.Crim.App. 1996). For the first three situations, the restriction upon freedom of movement must amount to the degree associated with an arrest rather than an investigative detention. *Id.* For the fourth situation, the officer's knowledge of probable cause must be communicated to the suspect, and custody is established only if that communication of probable cause, combined with other circumstances, would lead a reasonable person to believe they are under restraint to a degree associated with an arrest. *Id.*

Texas courts have also considered these additional factors to determine if a person is in custody: (1) the officer was conducting an investigation; (2) the suspect was handcuffed; (3) the officers used weapons to detain the suspect; (4) police outnumbered the individuals detained; (5) threatening language was used; (6) the suspect was transported to another location; (7) the suspect's vehicle was blocked; and (8) physical force was used. *Estrada v. State*, No. 04-12-00136-CR, 2012 WL 6720655, at *3 (Tex.App.--San Antonio Dec. 28, 2012), *aff'd*, No. PD-0106-13, 2014 WL 969221 (Tex.Crim.App. Mar. 12, 2014) (not designated for publication) (citations omitted).

**B. Analysis**

Gonzales stopped Appellant and informed him of the reason for the traffic stop and asked a few questions about his destination. Officer Gonzales then asked Appellant to come back to his patrol vehicle to continue the interaction because of the noise caused by the wind and passing vehicles. Gonzales began checking Appellant's personal information on his computer while he

15

continued to speak to Appellant about his phone number, address, residence, and place of work, health issues, the ownership of his vehicle, and whether the vehicle was insured. While Gonzales testified that Appellant was not free to leave the scene and was being detained, the audio portion of the video reflects that Appellant was not informed of those facts.

After spending approximately five minutes in the patrol vehicle, Gonzales told Appellant, "It is very important that you listen to me. Let me explain what some of my jobs are out here with the Sheriff's Office, okay? Other than traffic enforcement and regular patrol duties, I also work these highways looking for criminal activity." Gonzales proceeded to ask Appellant if he had any contraband or weapons in the vehicle, and Appellant conceded that there might be ammunition in the vehicle. Gonzales next asked if Appellant was still on parole, and Appellant replied that he was not. Gonzales then asked if Appellant had any cocaine, heroin, marijuana, or methamphetamine in the vehicle, and Appellant admitted to having a half-ounce of methamphetamine in the vehicle. After asking about the presence of the baggie and torch lighter on the vehicle's center console, Gonzales handcuffed Appellant. Gonzales then read Appellant the *Miranda* warnings and Appellant acknowledged that he understood them. Gonzales then asked where the methamphetamine was located, and Appellant replied that it was in a backpack in the vehicle.

On appeal, Appellant argues that the interaction was converted from a traffic stop to a narcotics investigation when Gonzales began asking about the presence of drugs. Appellant testified at the suppression hearing that he did not believe that he was free to leave at that point and he felt like he was being accused of a crime. Appellant's briefing also relies on Gonzales's own testimony that he had detained Appellant at that time and that he was not free to leave. Based on these facts, Appellant argues that he was in custody for *Miranda* purposes when he admitted

16

that he possessed methamphetamine and that his statement should have been suppressed. We disagree.

The evidence on the other side of the ledger shows that Gonzales was alone prior to arresting Appellant and another officer did not arrive at the scene until after the arrest. Due to the interference caused by noise from the wind and passing vehicles on the highway, Gonzales asked Appellant to step out of his vehicle and sit in the patrol vehicle for the rest of the interaction; that action does not automatically convert an investigative detention into a custodial arrest. *See Rodriguez*, 575 U.S. at 356 (an officer may require a driver lawfully stopped to exit his vehicle so a traffic-offense investigation can proceed safely); *Al-Hanna*, 2019 WL 156779, at *6 (recognizing that handcuffing a person and transporting him to another location does not automatically convert an investigative detention into a custodial arrest, especially when the conditions at the scene prevent the officer from effectively conducting his investigation); *Roberts v. State*, Nos. 07-15-00282-CR, 07-15-00283-CR, 2017 WL 2823777, at *2, 6 (Tex.App.--Amarillo June 28, 2017, no pet.) (mem. op., not designated for publication) (placing a suspect in a patrol vehicle following a vehicular collision did not render the suspect in custody for *Miranda* purposes where the suspect was uncooperative and the officer testified that he needed to continue his investigation away from the scene of the collision while emergency personnel were working).

Significantly, Gonzales did not verbally express his belief that Appellant was guilty of a crime, or handcuff Appellant until after Appellant admitted that he possessed methamphetamine. The fact that Appellant was not handcuffed when he made the statement weighs against a finding of custody. *See Greer v. State*, No. 14-18-01000-CR, 2020 WL 6439721, at *7 (Tex.App.--Houston [14th Dist.] Nov. 3, 2020, pet. ref'd) (mem. op., not designated for publication) (in determining that the accused was not in custody, court found it significant that the video of the

17

traffic stop established that he was not handcuffed until he revealed, after previously denying it, that he had a weapon).

Finally, the bodycam video shows that during the encounter, Gonzales was calm and professional, never raised his voice while speaking with Appellant, did not use physical force against Appellant, and did not threaten to arrest Appellant or draw a weapon. The encounter itself took only seven-and-a-half minutes from the time Gonzales made the initial contact until Appellant admitted that he possessed methamphetamine.

Under the totality of the circumstances, we cannot say that the record shows Appellant experienced a level of coercion that would lead a reasonable person to believe that they were detained to the degree associated with a formal arrest. We hold that the trial court did not abuse its discretion by impliedly finding that Appellant was not in custody when he admitted that he possessed methamphetamine. *See, e.g.*, *id*. at \*6-7 (holding that the defendant was not in custody when the officer: (1) ordered the defendant out of his car to continue the investigation; (2) did not communicate his belief that the suspect was guilty, but only asked him questions about the traffic stop and whether he possessed weapons or contraband; and (3) did not aggressively question the defendant or unreasonably prolong the interaction); *Estrada*, 2012 WL 6720655, at \*7-8 (holding that the defendant was not in custody where: (1) the defendant was not handcuffed before making an incriminating statement; and (2) the officers did not articulate their intent to detain or arrest the defendant, did not aggressively question the defendant or draw their weapons, and did not use physical force against the defendant).

### C. *State v. Ortiz*

In support of his argument that he was subjected to custodial interrogation, Appellant relies on *State v. Ortiz*, in which the Texas Court of Criminal Appeals held that a suspect was in custody

18

for *Miranda* purposes while being questioned during a traffic stop. 382 S.W.3d 367, 377 Tex.Crim.App. 2012). There, an officer stopped a vehicle for speeding and after the driver admitted that he was on probation for narcotics possession and he and his wife gave conflicting stories about their destination, the officer asked the driver, "How much drugs are in the car?" *Id.* at 369-70. The driver denied the presence of narcotics but consented to a search of his person and vehicle. *Id.* at 370. Other officers who had arrived on the scene searched the wife and handcuffed her after the officers found something of interest on her person, and the questioning officer handcuffed the driver and asked him about what kind of narcotics his wife possessed. *Id.* Before the officer read the *Miranda* warnings, the driver responded, "[C]oca," (i.e., cocaine). *Id.* at 370-71. Following a suppression hearing, the trial court found that the driver was in custody when he made the statement and suppressed his statement, and the court of appeals affirmed the suppression order. *Id.* at 371-72.

In affirming the suppression of the statement, the Court of Criminal Appeals relied on the following facts that existed before the driver's statement: (1) the officer had expressed his suspicion to the driver "point blank" that he had drugs in his possession; (2) additional officers had arrived on the scene after the initial stop and created a stronger show of force against the driver and his wife; (3) the driver and his wife had been patted down and handcuffed when the driver made the admission; and (4) the officer expressly manifested his belief to the driver that he was connected to illegal activity, all of which combined to lead a reasonable person to believe that his liberty was restrained to a degree associated with a formal arrest. *Id.* at 373-75.

Our facts are markedly different. The officer in *Ortiz* directly accused the driver ("How much drugs are in the car?") and asked for consent to search the vehicle and the driver's person. Gonzales limited his statements to describing his assigned duties with the Sherriff's Office and

asked if Appellant had several different kinds of contraband in the vehicle. Gonzales only conducted a very brief pat-down of Appellant's person when he observed that Appellant was carrying a pocketknife. Gonzales did not expressly communicate his suspicions that Appellant possessed narcotics, which contrasts with *Ortiz*, where the officer's question "by its very nature, conveyed to the [driver the officer's] presupposition that the [driver] was aware that his wife possessed drugs and that the [driver] knew what kind of drugs she possessed." *See id.* at 373-74. Unlike *Ortiz*, where multiple officers responded and interacted with the driver and his wife, Gonzales was the only officer on scene then. *Id.* at 374. And unlike the driver in *Ortiz*, who made the statement about his wife's drug possession after being handcuffed and before *Miranda* warnings were read, Appellant was not handcuffed until after he admitted that he possessed methamphetamine. *Id*. at 374-75. Given these distinctions, we find *Ortiz* inapposite.

Appellant's Issue Three is overruled.

## VI. CONCLUSION

The trial court did not err in denying Appellant's motion to suppress. The trial court's judgment of conviction is affirmed.


JEFF ALLEY, Justice

August 17, 2022

Before Rodriguez, C.J., Palafox, and Alley, JJ.

(Do Not Publish)

20